MARC LAZO (Ca. Bar. No. 215998)
PHILIP EIKER (Az Bar. No. 025913)
**WILSON KEADJIANBROWNDORF LLP**
62 Rail X Ranch Estates Place
Patagonia, Arizona 85624
Phone No.:  (888) 690-5557
Fax No.:    (949) 234-6254
mlazo@wkbllp.com

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| Daniel Lewis Hendon, | Case No. 2:11-bk-21164-SHG |
| Debtor. | Adversary No. 2:11-ap-01972-SHG |
| DIVERSIFIED FUNDING GROUP, LLC, an Arizona limited liability company; REYNALDO GUTIERREZ, an individual; THE FARADJOLLAH FRED DJAHANDIDEH TRUST, an Arizona Trust; FRED DJAHANDIDEH as Trustee of The Faradjollah Fred Djahandideh Trust; HCM RETIREMENT TRUST, a California Trust; DREW SHERLINE as Trustee of HCM RETIREMENT TRUST; RIGHTPATH INVESTORS, LLC, a limited liability company; SIROTKA HOLDINGS, LLC, a limited liability company; iDEA SERVICES, LLC, a limited liability company; VAN BUREN DEVELOPMENT, LLC, a limited liability company; SOUTHWEST DEVELOPMENT PARTNERS, LLC, a limited liability company; FORTUNA ASSET MANAGEMENT, LLC, a limited liability company, <br> Plaintiff, <br> v. <br><br> DANIEL L. HENDON, <br><br> Defendant. | **DIVERSIFIED FUNDING GROUP'S STATEMENT IN OPPOSITION TO CREDITORS' OBJECTIONS TO THE TRUSTEE'S MOTION TO APPROVE THE SALE OF CERTAIN LIQUIDATING TRUST ASSETS** <br><br> **Hearing Date** <br><br> Date: July 15, 2016 <br> Time: 11:00 AM <br> Place: 230 N. First Ave. Courtroom 301 Phoenix AZ |

1
DIVERSIFIED FUNDING GROUP'S STATEMENT IN OPPOSITION TO CREDITORS' OBJECTIONS TO TRUSTEE'S MOTION TO APPROVE SALE OF ASSETS

Case 2:11-bk-21164-SHG    Doc 198    Filed 07/14/16    Entered 07/14/16 23:35:38    Desc
                          Main Document      Page 1 of 9

Diversified Funding Group, LLC, Reynaldo Gutierrez, The Faradjollah Fred Djahnadideh Trust, Fred Djahandideh as Trustee of the Faradjollah Fred Djahandideh Trust; HCMRetirment Trust, Drew Sherline as Trustee of HCM Retirement Trust, Rightpath Investors LLC, Sirotka Holdings LLC, iDEA Services, LLC, Van Buren Development LLC, Southwest Development Partners, LLC and Fortuna Asset Management, LLC (collectively referred to herein as "Diversified")submit the following Memorandum of Points and Authorities in support of their opposition to the objections filed by Creditors Ernie Garcia, Verde Auto Services, LLC, and Verde Investments, Inc. (collectively "Verde") and Kelly Carroll ("Carroll") (Verde and Carroll are collectively referred to herein as the "Creditors"), objecting to the Trustee's Sale of Certain Liquidating Trust Assets Free and Clear of Liens Claims, Encumbrances, and Interest (the "Sale").[1]

## I. **INTRODUCTION AND PRELUDE TO OBJECTING CREDITORS' CRIMINAL CONSPIRACY AND SCHEME TO SIPHON MILLIONS OF DOLLARS FROM THE BANKRUPTCY ESTATE.**

The objections to the Trustee's Sale filed by Creditors Verde and Carroll are not only meritless; they were made for the sole purpose to further hinder, delay, and defraud the Bankruptcy Court, bankruptcy creditors, and specifically judgment creditor Diversified Funding Group, LLC ("DFG"), whose pending Adversary Complaints implicate Creditors' instrumental role in the criminal conspiracy scheme that will soon be exposed to this Court.

Verde is not a creditor in Daniel Hendon's ("Debtor") bankruptcy estate and has no interest in the Trustee's Sale or any justification for filing an objection, other than its own interest in obtaining a "get out of jail free card." In order to interfere with DFG's purchase of the Trustee's claims, two days prior to this Court's hearing on the Sale, Verde purports to have acquired two creditor claims in order to assert additional rights it would never have standing to assert in the first place. Verde's transfer of claims is a ruse to feign standing to bring meritless objections and hinder DFG's diligent efforts to recover assets for the benefit of the bankruptcy estate. Quite simply, as set forth below, DFG is the

---
[1] While certain other creditors have filed joinder objections, only Verde and Carroll have filed substantive oppositions.

2
DIVERSIFIED FUNDING GROUP'S STATEMENT IN OPPOSITION TO CREDITORS' OBJECTIONS TO
TRUSTEE'S MOTION TO APPROVE SALE OF ASSETS

only creditor whose efforts will enable the other defrauded creditors who have been similarly victimized by the unlawful conduct and collusion of the Debtor and Verde to finally begin to recover property of the bankruptcy estate. As acknowledged by the Trustee, DFG is in the best position to do so.

Verde's objection admittedly points out that Verde is a Defendant in two pending lawsuits, one filed in California Federal Court and an Adversary Proceeding in this Court. Both actions demonstrate an elaborate scheme between Verde and the Debtor to defraud the bankruptcy court and DFG, and DFG's discovery efforts since the filing of said actions have further brought to light the undeniable evidence that demonstrates Verde's active involvement in the criminal conspiracy to defraud this Court, the Trustee, and all creditors including DFG who have been waiting seven (7) years to recover the monies that were stolen from them by Debtor and his cohorts.

Despite these irrefutable facts, Verde makes the unsubstantiated, self-serving, and frankly absurd contention that "it is in the estate's best interest to either settle or not pursue the claims at all." In a transparent effort to attempt to buy its own freedom, Verde is urging this Court to "disregard" the millions of dollars siphoned from the bankruptcy estate through its orchestrated fraud. However, the only interest that would be served in not pursuing the millions of dollars siphoned from the bankruptcy estate is that of Verde, whose criminal conduct, as outlined below, was instrumental in Debtor's conspiracy to defraud this Court, the Trustee, and all the creditors.

Not surprisingly, the "joinder" objection filed by Debtor is intended solely to shield himself and his cohorts from the civil and criminal liability that they face, and to further effectuate illegal conduct. Among other culpable parties named in DFG's adversary and California actions, the objecting creditors including Kelly Carrolland Verde have engaged in conspiracy, and as set forth below, are also culpable in the fraudulent scheme to pull the wool over this Court's eyes and siphon millions of dollars from the bankruptcy estate.

///

///

///

///

3
DIVERSIFIED FUNDING GROUP'S STATEMENT IN OPPOSITION TO CREDITORS' OBJECTIONS TO TRUSTEE'S MOTION TO APPROVE SALE OF ASSETS

Case 2:11-bk-21164-SHG    Doc 198    Filed 07/14/16    Entered 07/14/16 23:35:38    Desc
Main Document    Page 3 of 9

## II. **THE INSTRUMENTAL INVOLVEMENT OF THE VERDE PARTIES IN BANKRUPTCY FRAUD IS INDISPUTABLE.**

On July 25, 2011, Debtor petitioned for individual Chapter 11 relief in the United States Bankruptcy Court, District of Arizona, Case No. 2:11-bk-21164 and simultaneously petitioned for relief for all entities under his control, Case No. 2:10-bk-02794. On December 16, 2011, Chapter 11 Bankruptcy Plan was confirmed in Debtor's reorganization of his business entities.

In April of 2014, Debtor was indicted through a federal raid for employing and forging documents for illegal workers in his various car wash entities. As part of his plea deal with the U.S. Attorney, Debtor was sentenced to one year in jail and was also required to completely divest his interest in the car wash entities. However, in order to prevent DFG and the Trustee from reaching any of the sale proceeds from the sale of his interests in the car wash business, Debtor, his daughter Heather Hendon("Ms. Hendon") and Verde orchestrated a scheme to layer multiple fraudulent transactions involving straw man Ernie Garcia to ensure that monies would funnel back to the Debtor.

In order to effectuate the scam, Debtor arranged with Ernie Garcia, by and through his counsel Steven Johnson, and his entities Verde Auto Services, LLC, and Verde Investments, Inc. to assume the role of a straw buyer of the notes securing the car washes. In June of 2014, Verde purchased three mortgage notes secured by the assets of the car wash businesses for substantial discounts from the creditors. Within two months of these purchases, in August of 2014, Verde sold the mortgage loans to PacWest Energy, LLC for a multi-million dollar profit, in conjunction with which the PacWest Energy LLC also acquired the assets of the car washes through deeds in lieu of foreclosure. These "deeds-in-lieu" exonerated the Debtor from any further liability under the notes or security instruments. Immediately thereafter, Verde transferred $600,000 of the proceeds from the sale of the mortgage notes to Debtor's daughter Ms. Hendon. Upon receipt of that money, Ms. Hendon made arrangements to meet with Ellis Rubenstein, a family friend, who was given $500,000 of that money, which Rubenstein then channeled back to the Debtor over time. In fact, through deposition testimony, DFG has established that Debtor arranged for Mr. Rubenstein to meet his daughter at a local bank and instructed that a transfer be made immediately, i.e., the same day Verde "loaned" her the money. **[Exhibit 1, H. Hendon Deposition Transcript Vol. 2, 268-285].**

4
DIVERSIFIED FUNDING GROUP'S STATEMENT IN OPPOSITION TO CREDITORS' OBJECTIONS TO TRUSTEE'S MOTION TO APPROVE SALE OF ASSETS

Case 2:11-bk-21164-SHG    Doc 198    Filed 07/14/16    Entered 07/14/16 23:35:38    Desc
Main Document    Page 4 of 9

In turn, Mr. Rubenstein paid out the funds and provided the Debtor with large sums of cash (in small cash deposits under $10,000 to avoid reporting requirements); paid for various expenses of the Debtor, including Debtor's attorney's fees; provided Debtor with a debit card under the alias "Daniel Lewis" to use at his leisure; placed funds into the accounts of Debtor's mother, girlfriend Maria Barker, and others; and committed numerous other misappropriations to defraud the Bankruptcy Court, Trustee and DFG.

**Essentially, while Debtor had agreed, in exchange for a lighter sentence and other concessions, to completely divest himself of his interest in the car washes, and while at the same time Ernie Garcia wrote a letter that was presented to Debtor's sentencing judge to plead for a lesser sentence based on Garcia's representation that Debtor was completely destitute and had "lost his family business," Debtor, Heather Hendon and Mr. Garcia were secretly plotting to siphon assets back to Debtor through the proceeds from the sale to PacWest, and recruited the easily manipulated Rubenstein to help effectuate their fraudulent conspiracy.**

In furtherance of this conspiracy, in April of 2015, Verde transferred an additional $1,000,000 from the proceeds of the sale to Ms. Hendon, which found their way back to Debtor. Again, the funds were transferred into Mr. Rubenstein's account, and ultimately sent to Debtor or used for the benefit of the Debtor to pay for his personal expenses and to make plan payments to keep his Chapter 11 proceeding alive. **[Exhibit 2, H. Hendon Deposition Transcript Vol. 2, 389-392]**.

Thus, Verde transferred a total of $1.6M to Ms. Hendon under the guise of two promissory notes, without any evidence of a security instrument, without any method of repayment, and without any showing of collateralization. **[Exhibit 3].** These monies irrefutably ended up in Debtor's hands, scattered through numerous bank accounts held by Debtor's family members and Debtor himself. The transfer of the $1.6M to the Debtor was purposely orchestrated by Debtor and Heather Hendon to involve Verde and other defendants in order to conceal, from the bankruptcy court, Trustee and creditors, the proceeds Debtor received from the sale the car wash entities, <u>**in which he had purported to divest his interests as part of his plea bargain**</u>. Verde is therefore liable for conspiracy and bankruptcy fraud foraiding in the concealment of Debtor's scheme to defraud the Bankruptcy
5
DIVERSIFIED FUNDING GROUP'S STATEMENT IN OPPOSITION TO CREDITORS' OBJECTIONS TO TRUSTEE'S MOTION TO APPROVE SALE OF ASSETS

Case 2:11-bk-21164-SHG    Doc 198    Filed 07/14/16    Entered 07/14/16 23:35:38    Desc
Main Document    Page 5 of 9

Court and Trustee, and for making fraudulent representations to the Court – including Debtor's sentencing judge - in addition to taking overt actions to promote and facilitate fraudulent transfers.

Verde also agreed to fund any amounts necessary to close Debtor's Bankruptcy cases in order to effectuate this scheme outside the purview of the Bankruptcy Court. The transaction of the sale of the notes to Verde, and subsequent sale of the notes and assets to PacWest, was specifically structured so that a substantial portion of the funds would be earmarked for the benefit of the Debtor and siphoned through defendant Heather Hendon under the guise of two unsecured "promissory notes" that remain in default and will never be enforced.

Significantly, the Verde Parties made additional fraudulent representations to the Bankruptcy Court, and continue toconceal material facts, most recently through their belatedly filed "Objections," by failing to disclose the actual transactions that they orchestrated. In fact, the Verde Parties went beyond mere concealment, in conjuring up a "letter of intent" which was submitted to the Bankruptcy Court for a proposed "acquisition" of the car wash entities, and which grossly mischaracterized the scheme they orchestrated with Debtor, Heather Hendon and Ellis Rubenstein.[2]

## III. THE SALE OF THE TRUSTEE'S CLAIMS IS A GOOD FAITH ARMS-LENGTH TRANSACTION THAT BENEFITS THE ESTATE AND IS PROPER UNDER THE CONTROLLING LAW OF THE NINTH CIRCUIT.

It is well-settled law that the first requirements of a "good faith" purchase, in the context of the assets of a bankruptcy estate, are that there be an identifiable purchaser (*Ferrari N. Am., Inc. v. Sims*, 211 F.3d 475, 478-80 (9h Cir. 2000)) and that the purchaser must give value. (*Ewell v. Diebert*, 958 F.d 276, 281 (9th Cir. 1992). The case of *In Re Lahijani*establishes the controlling law in the Ninth Circuit that a "trustee's causes of action are intangible items of property of the estate that may be sold."*In re Lahijani*, 325 B.R. 282, 288(B.A.P. 9th Cir. 2005).

In fact, the Ninth Circuit has affirmatively and repeatedly established that the Trustee's inherent power to sell or transfer causes of action belonging to the estate is in the Trustee's discretion.

---

[2]DFG is in possession of undisputable evidence in the form of bank statements that memorialize these transfers and implicate many of the named defendants in the pending adversary proceedings. Due to confidentiality agreements and privacy concerns that are in place, it cannot disclose them with this brief, but can lodge them under seal with this Court upon request.

*DuckorSpradling & Metzger v. Baum Trust,* 177 F.3d 774, 781 (9th Cir. 1999); *Briggs v. Kent,* 955 F.2d 623-625-26 (9th Cir. 1992.).

The controlling case of *In re Lahijani* involved facts almost identical to this case. The debtor in the *Lahijani* case filed for Chapter 7. *Id* at 285. Nine months after the bankruptcy case was closed, certain plaintiffs sued the debtor and others in state court in an effort to recover about $10 million that they alleged was embezzled before the bankruptcy filing. *Id*. The action alleged misrepresentation, concealment, rescission, conspiracy, breach of fiduciary duty, constructive trust, and conversion. *Id*. While the state court action was pending, the bankruptcy case was reopened and a Chapter 7 Trustee was appointed.

After losing in state court, plaintiffs' only remaining avenue for recovery was to maximize the value of the bankruptcy estate by purchasing the Trustee's avoidance actions. *Id*. The Ninth Circuit held that the trustee was authorized to sell the causes of action to the plaintiffs. *Id*. The Court rejected the argument that the claims be sold only to someone who would exercise the powers for the benefit of all creditors. *Id* at 288.

Here, pursuant to this binding authority, the Creditors' objections on the grounds that the Trustee's avoidance powers belong only to the Trustee are meritless and run afoul of well settled law. In fact, the Creditors have only cited to unpublished and/or non-controlling cases to support their arguments, while completely ignoring the established rule of law in the Ninth Circuit. Like in the case of *In re Lahijani*, this Court must find that the sale of the Trustee's avoidance powers are proper under the circumstances, so long as the transaction is fair and equitable.

Moreover, DFG is the only viable purchaser of the Trustee's claims, as the Trustee himself has determined. As set forth in the Trustee's motion, after conducting a diligent review of DFG's offer, ***and particularly the information DFG has acquired over the past seven (7) years of pursuing Debtor and his cohorts, <u>which no other creditor can come close to claiming</u>***, and after determining that he lacks the means to bring the avoidance claims directly, concluded that DFG's offer is fair and equitable. Importantly, no other creditor has approached the Trustee with an offer to purchase his claims, nor has any other creditor filed any adversary proceedings ***<u>or otherwise made any efforts to recover estate assets</u>***, as has DFG.

7
DIVERSIFIED FUNDING GROUP'S STATEMENT IN OPPOSITION TO CREDITORS' OBJECTIONS TO TRUSTEE'S MOTION TO APPROVE SALE OF ASSETS

Case 2:11-bk-21164-SHG    Doc 198    Filed 07/14/16    Entered 07/14/16 23:35:38    Desc
Main Document    Page 7 of 9

The Trustee's discretion must be given deference. *In re Lahijani*, 325 B.R. at 289 ("***the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis.***") (emphasis added). Rather than adhering to this binding rule of law – and in fact concealing it – in a pathetic attempt to delegitimize DFG's claims, Verde contends that DFG threatened the Trustee to procure the fruits of the Trustee's motion. Nothing could be further from the truth. In actuality, after discovering that the Debtor's plan payments and fees were paid from the illicit transaction with the Verde parties, the Trustee, upon his own volition, decided that he would not deposit such funds until the source of the funds were verified. DFG had neither threatened the Trustee nor requested that the Trustee take such action. DFG only rightfully requested that all fees paid for the benefit of the Debtor be disclosed by the Debtor and verified by the Trustee and the Court. DFG was justified in making this request, as the source of the plan payments had been an ongoing point of contention and interest to the bankruptcy court and DFG. The bankruptcy court, through the Honorable Judge Eileen Hollowell, had justifiably shown concern over the Debtor's failure to ever disclose this information. **[Exhibit 4, Transcript of Hearing from June 18, 2015 16:2-5].** These concerns turned out to be valid.

In fact, DFG has now conclusively established that Judge Hollowell's concerns were justified and the Debtor purposefully concealed such information to preclude DFG and the bankruptcy court from learning that Debtor had earned approximately $1.6M in funds from the sale of the same car wash entities in which he had avowed to completely disclaim his interest as part of his compromised plea bargain. Verde's meritless objections, therefore, are aimed solely to delay these proceedings and to pull the wool over the Court's eyes in furtherance of the fraudulent conspiracy it started in 20**.

IV. **THE CREDITORS HAVE FAILED TO ESTABLISH THAT THERE EXIST ANY OTHER VIABLE OFFERS, AND THE BANKRUPTCY COURT MUST NOT PERMIT OFFERS INTENDED TO FURTHER PROMOTE, FRAUD, COLLUSION, OR UNFAIR ADVANTAGE, FURTHER WARRANTING THAT THE TRUSTEE'S MOTION BE GRANTED.**

Furthermore, the Creditors have failed to establish that there exists any other viable offers for the purchase of the Trustee's claims. DFG is informed that the Creditors, who are also the named Defendants in the Adversary Proceeding and California cases are the only other potential purchasers of the Trustee's claims. However, the law is clear that an offer to purchase estate assets, even if it is for reasonable value, will be disrupted if such purchase is done in furtherance of fraud or collusion between the purchaser and other bidders or the trustee. *In re Thomas*, 287 B.R. 782 (B.A.P. 9th Cir. 2002) ("'Good faith' of the purchaser of estate property, for purposes of …insulating from attack on…an authorized sale of estate property to good faith purchaser, can be defeated by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders");*In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992)("although the Bankruptcy Code and rules do not define good faith, courts have indicated that a lack of good faith is shown where there is evidence of misconduct, and unclean hands on the part of the purchaser.")

**Here, Verde, Carroll and the Debtor, have colluded and conspired to prevent DFG to purchase the Trustee's assets for the sole purpose of ensuring that no avoidance actions are brought against them**. <u>**Verde is trying to buy its innocence**</u>. The Creditors seek to avoid liability and to further effectuate their fraudulent schemes without interruption or interference by DFG, the Trustee, or the Bankruptcy Court. Based on established law, therefore, any offers made by the Creditors or any other named Defendant in DFG's pending actions, would constitute bad faith. In the interest of justice, the Court should not allow the Creditors to use the Bankruptcy Court as a mechanism to further unlawful conduct, engage in gamesmanship, and evade liability for their conduct.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court should approve the Trustee's Motion to Approve the Sale of Certain Liquidating Trust Assets and prohibit the culpable Creditors from interfering with the Sale.

Dated: July 14, 2016       WILSON KEADJIANBROWNDORF, LLP

By: _____
Marc Y. Lazo
Attorney for Plaintiffs and Creditors

9
DIVERSIFIED FUNDING GROUP'S STATEMENT IN OPPOSITION TO CREDITORS' OBJECTIONS TO TRUSTEE'S MOTION TO APPROVE SALE OF ASSETS