Michael A. Jones, State Bar #27311
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: mjones@allenbarneslaw.com

Attorneys for Thomas H. Allen, Individual Plan Agent, Post Confirmation Liquidating Trustee, and Disbursing Agent for the Bankruptcy Estate of Daniel L. Hendon

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceeding |
| DANIEL LEWIS HENDON, | Case No. 2:11-bk-21164-SHG |
| Debtor. | **SUPPLEMENTAL BRIEF TO THE MOTION TO APPROVE SALE REGARDING TRUSTEE'S OWNERSHIP OF CLAIMS** |

Thomas H. Allen, Individual Plan Agent, Post Confirmation Liquidating Trustee, and Disbursing Agent ("**Trustee**") for the Bankruptcy Estate of Daniel Lewis Hendon ("**Debtor**"), hereby files this brief as a supplement to the *Motion to Approve Sale of Certain Liquidating Trust Assets Free and Clear of Liens, Claims, Encumbrances, and Interests* [Dkt. No. 180] ("**Motion**"), pursuant to the Court's request at the hearing conducted on July 15, 2016 regarding the Motion. As set forth herein, the Trustee holds standing rights to many of the claims in litigation initiated by Diversified Funding Group, LLC ("**DFG**"). Accordingly, the Trustee may sell or settle such claims, to be determined between the competing offers before the Court at the upcoming evidentiary hearing on July 25, 2016.[1] The following Memorandum of Points and

---

[1] "Causes of action owned by the trustee are intangible items of property of the estate that may be sold." Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani), 325 B.R. 282, 287 (B.A.P. 9th Cir. 2005) citing 11 U.S.C. § 541(a)(1). And, a transaction amounting to acquisition of causes of action by a defendant "must be analyzed as a compromise as to which the court has an independent duty to determine whether it is 'fair and equitable.'" Id. at 290 quoting Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.), 292 B.R. 415, 420-21 (B.A.P. 9th Cir. 2003).

Authorities supports this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **FACTUAL BACKGROUND**

1. On February 3, 2010, the February Debtors[2] filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

2. On March 3 and 4, 2010, the March Debtors[3] filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

3. Together, the February Debtors and March Debtors are referred to herein as the "**Car Wash Entities**". The Car Wash Entities were engaged in a business that owned and operated car wash facilities in Phoenix, and the Debtor managed and owned such business in substantial part.

4. On July 25, 2011 ("**Petition Date**"), the Debtor filed his voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code thereby initiating this case.

5. On July 26, 2011, this Court entered an order authorizing joint administration of the Debtor's bankruptcy estate with the February Debtors and the March Debtors' estates in case no. 2:10-bk-02794-SHG (now closed) ("**Joint Case**").

6. On December 16, 2011, the Court entered an order [Joint Case Dkt. No. 1536] approving the *Debtor Proponents' Amended and Restated Plan of Reorganization Dated December 12, 2011* [Joint Case Dkt. No. 1516] ("**Plan**").

7. On December 11, 2012, the Court entered the *Order Approving Joint Trust*

---

[2] Danny's Happy Valley, LLC, 2:10-bk-02794-EWH; Danny's Raintree & Northsight, LLC, 2:10-bk-02796-EWH; Danny's Scottsdale & Shea, LLC, 2:10-bk-02799-EWH; and Danny's 59th Avenue, LLC, 2:10-bk-02802-EWH.

[3] Danny's Crossroads, LLC; 2:10-bk-05580-EWH; Danny's Gilbert Gateway, LLC, 2:10-bk-05583-EWH; Danny's San Tan, LLC, 2:10-bk-05585-EWH; Danny's Tempe, LLC, 2:10-bk-05588-EWH; Danny's Family Companies, LLC, 2:10-bk-05792-EWH; Danny's Car Services, LLC, 2:10-bk-05793-EWH; Danny's Scottsdale & TB, LLC, 2:10-bk-05794-EWH; National Car Care Development Corporation, 2:10-bk-05795-EWH; 84th & Bell, LLC, 2:10-bk-05796-EWH; 3rd & Bell, LLC, 2:10-bk-05797-EWH; Danny's Tatum, LLC, 2:10-bk-05798-EWH; 83rd & Union Hills, LLC, 2:10-bk-05799-EWH; Mayo & Scottsdale Family Car Wash, LLC, 2:10-bk-05800-EWH; Danny's Glass, LLC, 2:10-bk-05801-EWH; Danny's Fuel, LLC, 2:10-bk-05802-EWH; Paradise Village Car Care Centre, Inc., 2:10-bk-05805-EWH; Twentieth & Highland, LLC, 2:10-bk-05806-EWH; Danny's Commercial Properties, LLC, 2:10-bk-05772-EWH; Barcelona Restaurants III, LLC, 2:10-bk-05774-EWH; Barcelona Business Center, LLC, 2:10-bk-05775-EWH; and Danny's Office, LLC, 2:10-bk-05776-EWH.

*Agreement* [Joint Case Dkt. No. 1826] thereby approving the Trust.

8. The Trust incorporates the terms of the Plan. <u>See</u> Joint Case Dkt. No. 1817 at pp. 2-3.

9. The Trustee is designated as the Individual Plan Agent and Liquidating Trustee for the Liquidating Trust. <u>See</u> Joint Case Dkt. No. 2070.

10. The Plan provides that the Debtor will, among other things, make significant periodic payments from commissions that the Debtor earned on windshield replacements over a five year period ("**Glass Commissions**"). Dkt. No. 1516 at p. 13.

11. Upon confirming the Plan, the Debtor soon thereafter ceased receiving Glass Commissions and making any payment to the Trustee on account of such Glass Commissions.

12. From February to May 2014, Verde Investments, Inc. ("**Verde**") purchased the secured loans encumbering the Carwash Entities' assets ("**Secured Loans**").

13. In August 2014, Verde sold the Secured Loans to PacWest Energy, LLC and PacWest conducted a deed in lieu of foreclosure to take possession of its collateral, including numerous of the Car Wash Entities and their businesses.

### A. DFG Litigation

14. As part of litigation pending in this Court and in California, DFG is investigating and has alleged that the Secured Loans transfer and deed in lieu transaction were conducted as part of a fraudulent scheme, and that as a result, the Debtor's bankruptcy estate was deprived of millions of dollars.

15. On or about March 4, 2016, DFG filed a complaint thereby initiating litigation against numerous parties in Case No. 30-2016-00839008 in the Superior Court of the State of California County of Orange Central Justice Center ("**State Court Litigation**"). Complaint attached as **Exhibit "1"**.

16. Also on or about March 4, 2016, DFG filed a complaint in this Court against numerous parties in Adversary No. 2:16-ap-00127 ("**Bankruptcy Litigation**"). Complaint attached as **Exhibit "2"**.

17. On May 2, 2016, the California Litigation was removed to the United States

District Court for the Central District of California, Southern Division, Case No. 8:16-cv-00823-JVS-JCG (together with the State Court Litigation, the "**California Litigation**", and collectively with the Bankruptcy Litigation, the "**DFG Litigation**").

18. In the California Litigation Complaint, DFG listed multiple claims alleging that the defendants participated in a scheme to fabricate a sale of the Car Wash Entities' businesses in an effort to prevent DFG and the Bankruptcy Court from reaching any of the proceeds of such sale. Exhibit "1" ¶¶ 41-42.

19. DFG also alleged that the defendants' intentional acts were designed to disrupt and frustrate Plaintiff's ability to receive performance of the Debtor's obligations in his bankruptcy proceeding. Id. ¶ 91.

20. The California Litigation Complaint includes other allegations that the defendants' actions harmed the Debtor's bankruptcy estate. See also id. ¶ 50 (alleging that one of the transfers was made from "the proceeds from the fraudulent sale of the car wash business which was intended to defraud the bankruptcy court"); id. ¶ 52 (defendants conspired in a scheme "outside the purview of the bankruptcy court, in order to perpetrate a fraud on the court and specifically to preclude plaintiff from reaching such assets"); id. ¶ 80 ("Defendants' actions were purposefully designed to keep Daniel Hendon's assets out of reach of creditors in his individual bankruptcy case . . . ."); id. ¶ 135 ("Defendants[] wrongfully transferred, acquired and/or hold property and monies that were deprived from the bankruptcy estate . . . ."); id. ¶ 155 ("Defendant's [sic] wrongfully transferred, acquired and/or hold property and monies that were deprived from the bankruptcy estate . . . .").

21. In the Bankruptcy Litigation Complaint, DFG asserted similar facts as those described in the California Litigation Complaint against substantially similar defendants. Exhibit "2". In that Complaint, DFG also alleged that the Debtor perpetrated a scheme to hide and transfer assets from DFG and the Bankruptcy Court. Id. ¶¶ 82, 85, and 88.

**B. Debtor's Plan and Liquidating Trust**

22. Pursuant to the Plan, the Liquidating Trust Agreement and Declaration of Trust dated November 12, 2012 ("**Trust**") was created to administer and implement the Plan. See

Joint Case Dkt. No. 1817.

23. On December 11, 2012, this Court entered the *Order Approving Joint Trust Agreement* thereby approving the Trust. Joint Case Dkt. No. 1826.

24. The Trust incorporates the terms of the Plan. See Joint Case Dkt. No. 1817 at pp. 2-3.

25. The Trustee is designated as the Individual Plan Agent and Liquidating Trustee for the Trust. See Joint Case Dkt. No. 2070.

26. The Trust's assets consist of, among other things, Avoidance Actions. "Avoidance Action" is defined under the Debtor's confirmed Chapter 11 Plan of Reorganization as "a claim or cause of action of an Estate of a Proponent to avoid transfers made by the Proponent to the extent such claim arises under §§ 544-551 of the Bankruptcy Code." Joint Case Dkt. No. 1516 at p. 82 and 1516-2 at p. 1.

27. As authorized by the Bankruptcy Court and pursuant to the Plan, the Trustee has the duty and power to "perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, objecting to Claims and Disputed Claims; commencing, prosecuting or settling Causes of Action and Avoidance Actions . . ." Joint Case Dkt. No. 1817 at pp. 6-7.

28. Pursuant to the Plan, Causes of Action are defined as "with regard to Hendon and the Hendon Trust, any right, claim, tort, lien, liability, obligation, action, cause of action, avoiding power, proceeding, debt, contract, judgment, offset, damage and demand whatsoever in law or equity, whether known or unknown, contingent or otherwise, that the Debtor and its Bankruptcy Estate may have against any Person . . ." Joint Case Dkt. No. 1516-2 at pp. 2-3.

29. The Plan and the Trust provide in multiple sections that all Avoidance Actions and Causes of Action vest in the Trust and that the Trustee has the sole right to prosecute such actions, including:

    a. Plan at p. 42: "On the Effective Date, Avoidance Actions of the Hendon or Hendon Trust estates shall be deemed transferred to the Individual Plan Agent."

      b.      Plan at p. 69-70: "The Individual Plan Agent shall have the following rights, powers and duties: To prosecute Avoidance Actions and other Causes of Action transferred to the Individual Plan Agent in accordance with IVA4."

      c.      Plan at p. 82: "On the Effective Date, the Liquidating Trustee shall succeed to all Avoidance Actions of the Hendon and Hendon Trust Estates . . . the net proceeds of all such Avoidance Actions shall be assets of the Liquidating Trust distributable on account of claims against the Hendon an Hendon Trust estates."

      d.      Plan at p. 84: "All Avoidance Actions and Causes of Action held by, through or on behalf of Hendon and/or the Hendon Trust and/or their Estates are hereby preserved in full."

      e.      Trust at pp. 6-7: "The Trustee shall have the authority, power and obligation [to] perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, objecting to Claims and Disputed Claims; commencing, prosecuting, or settling Causes of Action and Avoidance Actions . . . ."

      f.      Plan at pp. 40, 42: The Avoidance Actions and Causes of Action transferred to the Trust as Transferrable Assets and are listed as a source for payment of creditors under the "Funding Provisions" section of the Plan that sets forth the "Plan funding obligations of the Proponents."

30.    The Trustee requested and received transfer from the Debtor's bankruptcy estate of any and all of its interest in the nine causes of action listed in the California Litigation Complaint as Transferable Assets under the Plan and Trust.

///

///

///

-6-

## II. SUPPLEMENTAL ANALYSIS

### A. Many of DFG's litigation claims are Avoidance Actions and arise under Bankruptcy Code § 549, or are Causes of Action under the Trust.

The Debtor's bankruptcy estate still exists. Code § 1115(a) of the Bankruptcy Code provides that in the case of an individual, "property of the estate" includes not only property specified in Code § 541 existing at the time of filing the bankruptcy petition, but also property acquired after filing but before the case is closed. Because the Debtor is still a debtor in a pending bankruptcy case, causes of action for any such transfers and wrongdoing are the Trust's assets. As DFG has asserted, such causes of action and Avoidable Transfers could include, without limitation: (i) claims that the Debtor or others held undisclosed estate property on the Petition Date or transferred away assets that would otherwise be available to the bankruptcy estate; or (ii) that the Debtor or others participated in a fraudulent scheme to defraud the Trust of its assets, including its ability to collect Glass Commissions as a result of the Debtor transferring away his rights in the Carwash Entities in exchange for an undisclosed significant sum of money to him.

Causes of action that arise after confirmation of an individual's plan, but before the case is closed, dismissed or converted, constitute property of the individual's bankruptcy estate, administered by the Trustee. See In re Waldron, 536 F.3d 1239, 1242-43 (7th Cir. 2008) (claims for underinsured-motorist benefits, which arose after plan confirmation, are property of the estate, even though assets not used in the plan on the confirmation date vest in the debtor); Barbosa v. Soloman, 235 F.3d 31, 36-37 (1st Cir. 2000) (proceeds of property sold post-confirmation is property of the estate), cited in In re Jones, 657 F.3d 921, 928-29 (9th Cir. 2011).

In this case, the Plan provides that Avoidance Actions and Causes of Action vest in the Trust not in the Debtor. As a matter of general bankruptcy law, "those sums specifically dedicated to fulfillment of the plan" do not revest in the debtor and remain property of the estate. Jones, 657 F.3d at 928-29 (some property of the estate at confirmation vests in debtor, provided that plan does not provide otherwise, directing use for paying creditors); see also In re

Smith, 141 F.3d 1179 (9th Cir. 1998) (noting in Chapter 11 case that a "plan may prevent [p]roperty from vesting in the debtor' even if '[t]he plan does not state in unambiguous terms that the property of the estate does not revest in the debtor' (quoting In re Hillis Motors, Inc., 997 F.2d 581, 589 (9th Cir. 1993)); Murdock v. Holquin, 323 B.R. 275, 282, 284 (N.D. Cal. 2005) (holding that property that was to be sold under individual debtors' Chapter 11 plan so proceeds could be used "to effectuate the plan" remained property of the estate after confirmation of plan); In re Freeman, 527 B.R. 780, 788 (Bankr. N.D. Ga. 2015) ("In sum, property of the estate that existed at confirmation is returned to the debtor, unless such property is necessary to the fulfillment of the terms of the plan (for example, a pre-confirmation plan payment).").

In part, DFG's claims are for recovery of post-petition transfers of what is alleged to be the Debtor's property owned during his bankruptcy proceeding, that should have been disclosed and paid to creditors, and for damages incurred for defrauding his bankruptcy estate. Under the Bankruptcy Code, improper transfers during the course of a bankruptcy case are avoidable under 11 U.S.C. § 549. See In re Straightline Invs., Inc., 525 F.3d 870, 877 (9th Cir. 2008); see also In re First Protection, Inc., 440 B.R. 821, 827-28 (B.A.P. 9th Cir. 2010) ("The trustee's prima facie case requires proof of (1) a transfer (2) of estate property; (3) that occurred after the commencement of the case; and (4) that was not authorized by statute or the court."). Many of the claims alleged by DFG appear to be encompassed by Code § 549.

When, as here, Avoidance Actions including Code § 549 claims and other Causes of Action and the proceeds of such Avoidance Actions and Causes of Action are expressly reserved in a plan of reorganization for the benefit of creditors, the claims remain property of the estate after confirmation. See In re Trident Shipworks, Inc., 262 B.R. 107, 109 (Bankr. M.D. Fla. 2001) ("[A] Chapter 11 debtor has standing to institute actions to recover or set aside voidable transfers, including post-confirmation transfers pursuant to § 549."); In re T.F. Stone Cos., Inc., 170 B.R. 884, 888-89 (Bankr. N.D. Tex. 1994) (holding that plan of reorganization with retained causes of action, including § 549 claims, granted debtors standing to pursue avoidance of post-confirmation transfer), aff'd 72 F.3d 466 (5th Cir. 1995). See also Hillis

-8-

Case 2:11-bk-21164-SHG    Doc 204    Filed 07/20/16    Entered 07/20/16 16:03:07    Desc
Main Document    Page 8 of 13

Motors, Inc. v. Haw. Auto. Dealers' Ass'n, 997 F.2d 581, 589 (9th Cir. 1993) (property to be used "to pay back the company's creditors under the supervision of the court" remained property of the estate post-confirmation); Trident Shipworks, 262 B.R. at 109; T.F. Stone, 170 B.R. at 888-89.

Because the Debtor will not receive a discharge until he completes Plan payments, 11 U.S.C. § 1141(d)(5)(A), the circumstances here are similar to Hillis, where the plan of reorganization "did not grant [the debtor] a discharge but specifically contemplated that any discharge of its debts would occur in the future." Hillis Motors, 997 F.2d at 589. "Although there [is] a confirmed plan, the reorganization process continue[s] post-confirmation." Id.

### B. The Trustee has the standing and authority to pursue many of the claims asserted by DFG in the DFG Litigation.

Pursuant to the Plan and the Trust, the Trustee has the exclusive authority to pursue the Avoidance Actions, including Code § 549 claims and other Causes of Action owed by the Debtor's bankruptcy estate. See In re Tex. Gen. Petroleum, 52 F.3d 1330 (5th Cir. 1995) (liquidating trustee granted avoidance powers under plan had standing as "representative of the estate" under 11 U.S.C. § 1123(b)(3)(B)); In re Marrero, 382 B.R. 861 (B.A.P. 1st Cir. 2008) ("It is the trustee who is invested with the discretion to pursue or not pursue avoidance [under § 549] in a given instance; and it is the trustee who must weigh the relative costs and benefits of avoidance."); In re Haw. Telcom Commc'ns, Inc., 483 B.R. 217, 221 (Bankr. D. Haw. 2012) (liquidating trust had standing to assert Chapter 5 avoidance actions given to the trust under plan and litigation trust agreement); In re Kimball Hill, Inc., 449 B.R. 767 (Bankr. N.D. Ill. 2011) (liquidating trust had standing to enforce avoidance actions granted to the trust in plan); In re McGuirk, 414 B.R. 878, 879 (Bankr. N.D. Ga. 2009) ("Standing to assert actions under Section[] . . . 549 . . . to set aside . . . postpetition transfers is limited to the trustee, and individual creditors have no standing to bring such actions except through the trustee or debtor in possession."); In re Bequette, 184 B.R. 327 (Bankr. S.D. Ill. 1995) ("[U]nder the statute's plain language, § 549 is an avoidance power belonging solely to the trustee or debtor-in-possession.").

Notably, the Trustee is not limited to only pursuing claims that existed as of the Petition Date. The Trustee was vested with all of the Avoidance Actions as of the Plan's Effective Date which included Code §§ 549 and 550 claims that did not exist on the Petition Date. And, the Plan is clear that all such Avoidance Actions were preserved for the Trustee to the fullest extent. While the Plan seems to indicate that other Causes of Action are limited to those that belonged to the Debtor's estate on the Petition Date, it appears that many of the claims in the DFG Litigation relate to pre-bankruptcy fraudulent acts that fall within the scope of the Causes of Action that the Trust owns. Admittedly, the DFG Litigation is at its infancy and many of the claims are factually intensive and will require significant investigation and development. Yet, it would be massively detrimental to creditors in this case to deny that the Trustee has at least <u>some</u> standing rights in the DFG Litigation that allow for the pending sale or settlement to proceed. Any statutes of limitation relating to such Causes of Action and Avoidance Actions would undoubtedly be equitably tolled due to the concealment of such fraud.[4] Within the numerous factual allegations and litigation claims that DFG has asserted, the Trustee holds standing rights relating to many of the DFG Litigation claims, and such standing rights should properly be permitted to be sold or settled after the upcoming evidentiary hearing on July 25, 2016.

DATED: July 20, 2016

**ALLEN BARNES & JONES, PLC**

/s/ *MAJ #27311*
Michael A. Jones
1850 N. Central Ave. Suite 1150
Phoenix, Arizona 85004
Attorneys for Thomas H. Allen, Individual Plan Agent, Post Confirmation Liquidating Trustee, and Disbursing Agent for the Bankruptcy Estate of Daniel L. Hendon

---

[4] Under the equitable tolling doctrine, where a party "remains in ignorance of [a wrong] without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 111 S. Ct. 2773 (1991) (internal quotation omitted). As a general rule, "this equitable doctrine is read into every federal statute of limitation." Holmberg v. Armbrecht, 327 U.S. 392, 397 (1945). "Every court that has considered the issue has held that equitable tolling applies to § 546(a)(1)." Ernst & Young v. Matsumoto (In re United Ins. Mgmt.), 14 F.3d 1380, 1384-1385 (9th Cir. 1994) (collecting cases).

| 1 | **E-FILED** on July 20, 2016 with the U.S. Bankruptcy Court and copies served via ECF notice on all parties that have appeared in the case. |
|---|---|
| 2 | |
| 3 | |
| 4 | **COPY** mailed via U.S. Mail and emailed the same date to: |
| 5 | Christopher J. Pattock<br>OFFICE OF THE UNITED STATES TRUSTEE<br>230 N. First Avenue, Suite 204<br>Phoenix, AZ 85003-1706<br>Email: christopher.j.pattock@usdoj.gov |
| 6 | |
| 7 | **COPY** e-mailed the same date to: |
| 8 | |
| 9 | Matthew C. Browndorf<br>Grace M Kim<br>Marc Y. Lazo<br>Kent E Salveson<br>WILSON HARVEY BROWNDORF, LLP<br>1900 Main St., Suite 600<br>Irvine, CA 92614<br>mcbrowndorf@whbllp.com<br>gkim@whbllp.com<br>mlazo@whbllp.com<br>ksalveson@whbllp.com<br>*Attorneys for Diversified Funding Group, LLC* |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | Jerry L. Cochran<br>COCHRAN LAW FIRM, PC<br>2929 E. Camelback Rd., Suite 118<br>Phoenix, AZ 85016<br>jcochran@cochranlawfirmpc.com<br>*Attorneys for Kelly Carroll-Hendon* |
| 16 | |
| 17 | |
| 18 | |
| 19 | Donald L. Gaffney<br>SNELL & WILMER L.L.P.<br>One Arizona Center<br>Phoenix, AZ 85004-2202<br>dgaffney@swlaw.com<br>*Attorneys for TR&C DR Properties, LLC* |
| 20 | |
| 21 | |
| 22 | Daniel E. Garrison<br>ANDANTE LAW GROUP, PLLC<br>Scottsdale Financial Center I<br>4110 North Scottsdale Road, Suite 330<br>Scottsdale, AZ 85251<br>dan@andantelaw.com<br>*Attorneys for Official Committee of Unsecured Creditors* |
| 23 | |
| 24 | |
| 25 | |
| 26 | / / / |
| 27 | / / / |
| 28 | / / / |

| | |
|---|---|
| 1 | Alan A. Meda |
|   | BURCH & CRACCHIOLO PA |
| 2 | 702 E. Osborn Rd, Suite 200 |
|   | Phoenix, AZ 85014 |
| 3 | ameda@bcattorneys.com |
|   | *Attorneys for Daniel Lewis Hendon* |
| 4 | |
|   | James R. Harrison |
| 5 | O'STEEN & HARRISON, PLC |
|   | 300 W Clarendon Ave #400 |
| 6 | Phoenix, AZ 85013 |
|   | jharrison@vanosteen.com |
| 7 | *Attorneys for First Fidelity Bank, N.A.* |
| 8 | G. Patrick Jennings |
|   | U.S. DEPARTMENT OF JUSTICE |
| 9 | Trial Attorney Tax Division |
|   | P.O. Box 683 |
| 10 | Washington, DC 20044-0683 |
|   | guy.p.jennings@usdoj.gov |
| 11 | *Attorneys for United States* |
| 12 | Carolyn J Johnsen |
|   | DICKINSON WRIGHT PLLC |
| 13 | 1850 N. Central Avenue, #1400 |
|   | Phoenix, AZ 85004-4568 |
| 14 | cjjohnsen@dickinsonwright.com |
|   | *Attorneys for Victoria A. Hendon* |
| 15 | |
|   | Jamin S. Neil |
| 16 | PITE DUNCAN, LLP |
|   | 4375 Jutland Dr., Suite 200 |
| 17 | P.O. Box 17933 |
|   | San Diego, CA 92177-0933 |
| 18 | jneil@piteduncan.com |
|   | *Attorneys for CitiMortgage, Inc.* |
| 19 | |
|   | William Novotny |
| 20 | DICKINSON WRIGHT PLLC |
|   | 1850 North Central Avenue, Suite 1400 |
| 21 | Phoenix, AZ 85004 |
|   | wnovotny@dickinsonwright.com |
| 22 | *Attorneys for Vestar Arizona XLVIII, L.L.C.* |
| 23 | Randy Nussbaum |
|   | NUSSBAUM GILLIS & DINNER, P.C. |
| 24 | 14850 N. Scottsdale Road, Suite 450 |
|   | Scottsdale, AZ 85254 |
| 25 | rnussbaum@ngdlaw.com |
|   | *Attorneys for Henry H. Lee* |
| 26 | |
| 27 | / / / |
| 28 | / / / |

| | |
|---|---|
| 1 | Josephine E Salmon<br>PITE DUNCAN, LLP |
| 2 | 4375 Jutland Drive<br>P.O. Box 17933 |
| 3 | San Diego, CA  92177-0933<br>ecfazb@piteduncan.com |
| 4 | *Attorneys for JPMorgan Chase Bank, National Association, as Successor-in-Interest to Washington* |
| 5 | *Mutual Bank, f/k/a Washington Mutual Bank, FA* |
| 6 | */s/ Deana Guffey* |