# EXHIBIT 2

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5 | MARC LAZO (Ca. Bar. No. 215998)<br>PHILIP EIKER (Az Bar. No. 025913)<br>**WILSON KEADJIAN BROWNDORF LLP**<br>62 Rail X Ranch Estates Place<br>Patagonia, Arizona 85624<br>Phone No.:   (888) 690-5557<br>Fax No.:     (949) 234-6254<br>mlazo@wkbllp.com<br>peiker@aol.com |

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>   Daniel Hendon<br><br>      Debtor. | **Case No.** 2:11-BK-21164<br><br>**Chapter 11**<br><br>-------------------------------------------------<br><br>**Adversary No.** 2:16-ap-00127<br><br>**Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers and Violation of 18 U.S.C. §1962 (CIVIL RICO)** |
| Diversified Funding Group, LLC; Reynaldo Gutierrez; The Faradjollah Fred Djahandideh Trust; Fred Djahandideh; HCM Retirement Trust, Drew Sherline; Rightpath Investors, LLC; Sirotka Holdings, LLC; iDea Services, LLC; Van Buren Development, LLC; Southwest Development Partners, LLC; and Fortuna Asset Management, LLC, Judgment Creditors<br><br>V.<br><br>Daniel Hendon, Debtor; Nell Hendon; Heather Hendon; Chris Alvarez; Victoria Hendon; Kelly Carroll; Alan Meda; Ernie Garcia; Burch & Cracchiolo; Verde Auto Services, LLC; Verde Investments, Inc.; Ellis Rubenstein; Prudential Metal and Steel Supply, LLC; E Management Consulting, LLC; Ernie Vasquez; Gil Olguin; Jay Swart; Maria Barker; Pacwest Energy, LLC; Jacksons Food Stores, Inc.; Equilon Enterprises, LLC; and DOES 1 through 100, inclusive,<br><br>Defendants | |

**1**
Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers

Case 2:11-bk-21164-SHG Doc 204 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Main Document Page 2 of 17
Case 2:16-ap-00127-SHG Doc 1-2 Filed 03/04/16 Entered 03/04/16 16:50:03 Desc
Exhibit 2 Page 2 of 18

# ADVERSARY COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

Diversified Funding Group; Reynaldo Gutierrez; The Faradjollah Fred Djahandideh Trust; Fred Djahandideh; HCM Retirement Trust, Drew Sherline; Rightpath Investors, LLC; Sirotka Holdings, LLC; iDea Services, LLC; Van Buren Development, LLC; Southwest Development Partners, LLC; and Fortuna Asset Management, LLC, Plaintiffs and Judgment Creditors (collectively referred to herein as "Plaintiffs"), by and through their attorney of record, Marc Y. Lazo, hereby file this Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers against Daniel Hendon ("Debtor"); Nell Hendon; Heather Hendon; Victoria Hendon; Kelly Carroll; Alan Meda; Ernie Garcia; Verde Auto Services, LLC; Verde Investments, Inc.; Ellis Rubenstein; Prudential Metal and Steel Supply, LLC; Ernie Vasquez; Gil Olguin; Jay Swart; Maria Barker; Pacwest Energy, LLC; Jacksons Food Stores, Inc.; Equilon Enterprises, LLC (collectively referred to herein as "Defendants"). In support of its Adversary Complaint, Plaintiffs state as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

### I. THE PARTIES

**A. Plaintiffs**

1. At all times mentioned herein, Plaintiff DIVERSIFIED FUNDING GROUP, LLC was and is an Arizona limited liability company operating as a capital investment company with its principal place of business in Scottsdale, Arizona.

2. The other individuals and entities identified as Plaintiffs are parties to this matter by and through certain loan participation agreements with DIVERSIFIED FUNDING GROUP, LLC and have been harmed by the fraudulent conduct of Defendants.

**B. Defendants**

3. Defendants consist of Debtor, DANIEL HENDON ("Debtor"), HEATHER HENDON, and nineteen (19) separate entities or individuals, all of whom have participated in a scheme to defraud Plaintiff and the courts.

2
Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers
Case 2:14-bk-21124-SHG Doc 120-2 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Case 2:16-ap-00212-SHG Doc 1 Filed 03/04/16 Entered 03/04/16 10:15:03 Desc
Main Document Page 2 of 17
Desc Exhibit 2 Page 3 of 18

4. HEATHER HENDON is the Debtor's daughter and intentionally acted to participate in the fraudulent transfers orchestrated by Debtor, as alleged herein, in order to put beyond reach of creditors and Plaintiff property it would be entitled to. Defendant HEATHER HENDON was and is an individual residing in the city of Phoenix, Arizona.

5. CHRIS ALVAREZ is HEATHER HENDON'S spouse. Plaintiff is informed and believes that all acts by HEATHER HENDON complained of herein were taken on behalf of her marital community, and Defendants' marital community is liable to Plaintiff for any amount awarded pursuant to this Complaint.

6. Defendant ERNIE GARCIA participated as a strawman in a scheme to defraud Plaintiff and the bankruptcy court. Defendant ERNIE GARCIA is an acquaintance of Debtor and/or HEATHER HENDON. Plaintiff is informed and believes and thereon alleges that Defendant ERNIE GARCIA is a resident in the State of Arizona.

7. Defendant ERNIE GARCIA is the founder of VERDE INVESTMENTS, INC., and has the power, directly or indirectly, to direct the management and policies of VERDE INVESTMENTS, INC. Defendant VERDE INVESTMENTS, INC., is an Arizona corporation with its principal place of business in Phoenix, Arizona.

8. Defendant ERNIE GARCIA, an individual, is the founder of VERDE AUTO SERVICES, LLC, and has the power, directly or indirectly, to direct the management and policies of VERDE AUTO SERVICES, LLC. Defendant VERDE INVESTMENTS, INC., is an Arizona corporation with its principal place of business in Phoenix, Arizona.

9. Defendant ELLIS RUBENSTEIN is a family friend and/or former co-worker of Debtor. Plaintiff is informed and believes and thereon alleges that Defendant ELLIS RUBENSTEIN is a resident in the State of Arizona.

10. Defendant ELLIS RUBENSTEIN is the founder of PRUDENTIAL METAL AND STEEL SUPPLY, LLC, and has the power, directly or indirectly, to direct the management and policies of PRUDENTIAL METAL AND STEEL SUPPLY, LLC. PRUDENTIAL METAL AND STEEL SUPPLY, LLC, is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.

3
Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers
Case 2:14-bk-21124-SHG Doc 120 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc Main Document Page 3 of 17
Case 2:16-ap-00112-SHG Doc 1 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc Exhibit 2 Page 4 of 17

11. Defendant E MANAGEMENT CONSULTING, LLC, is an Arizona limited liability company and a shell corporation owned and operated by ELLIS RUBENSTEIN.

12. Defendant ALAN MEDA is the Debtor's attorney and has participated in the fraud, by among other things, orchestrating the fraudulent conduct and receiving a substantial amount of money otherwise belong to the creditors and specifically Plaintiff. Plaintiff is informed and believes and thereon alleges that Defendant ALAN MEDA is a resident in the State of Arizona.

13. Defendant BURCH & CRACCHIOLO, is an Arizona Corporation with its principal place of business at 400 N. Tustin Ave. Suite 370 Santa Ana, California 92705.

14. MARIA BARKER is the Debtor's girlfriend and participated in the fraud by receiving and/or hiding Debtor's assets. Plaintiff is informed and believes and thereon alleges that Defendant MARIA BARKER was and is an individual residing in the city of Corona Del Mar, California and has participated in the fraud upon the bankruptcy court in Arizona.

15. Defendant KELLY CAROL is the Debtor's ex-wife. KELLY CAROL participated in the fraud by receiving funds, rightfully belonging to the Plaintiff and/or the bankruptcy courts. Plaintiff is informed and believes and thereon alleges that Defendant KELLY CAROL was and is an individual residing in the State of Arizona.

16. Defendant NELL HENDON is Debtor's mother and participated in the scheme by wrongfully receiving funds and/or hiding assets to hinder, delay, or defraud Plaintiff and other creditors from collecting. Plaintiff is informed and believes and thereon alleges that Defendant NELL HENDON was and is an individual residing in the State of Arizona.

17. Defendant VICTORIA HENDON is Debtor's ex-wife and Defendant HEATHER HENDON'S mother and participated in effectuating the conspiracy and scheme. Plaintiff is informed and believes and thereon alleges that Defendant VICTORIA HENDON was and is an individual residing in the State of Arizona.

18. Defendant GIL OLGUIN is, or purports to be, a bond financier and helped facilitate the scheme to defraud Plaintiff and the courts. Plaintiff is informed and believes and thereon alleges that Defendant GIL OLGUIN was and is an individual residing in the State of Nevada and has participated in the fraud upon the bankruptcy court in Arizona.

4
Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers
Case 2:14-bk-21124-SHG Doc 120 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Case 2:16-ap-00127-SHG Doc 1-2 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Main Document Exhibit 2 Page 5 of 18 Page 4 of 17

19. Defendant JAY SWART is a longtime family friend of Debtor and received assets, including a Ferrari, to effectuate a scam upon the bankruptcy court and Plaintiff. Plaintiff is informed and believes and thereon alleges that Defendant JAY SWART was and is an individual residing in the State of Arizona.

20. Defendant PACWEST ENERGY, LLC participated in a fraudulent transaction to preclude Plaintiff from recovery. Plaintiff is informed and believes and thereon alleges that Defendant PACWEST ENERGY, LLC is a Delaware limited liability company domesticated as a foreign entity in the State of Arizona with its principal place of business in Phoenix, Arizona.

21. Defendant JACKSONS FOOD STORES, INC is the managing member of PACWEST ENERGY, LLC. Plaintiff is informed and believes that Defendant JACKSONS FOOD STORES, INC, is a Nevada corporation conducting business in the State of Arizona the managing member of PACWEST ENERGY, LLC

22. Defendant EQUILON ENTERPRISES, LLC is a member of PACWEST ENERGY, LLC.

23. Defendant ERNIE VASQUEZ is Debtor's former employee and assisted Debtor in engaging in several fraudulent transfers. Plaintiff is informed and believes and thereon alleges that Defendant ERNIE VASQUEZ was and is an individual residing in the State of Arizona.

**C. Alter Ego Status**

24. At all times mentioned herein, there was such a unity of interests between each of the individual defendants named herein, that the separate corporate entities should be disregarded, and the corporate entities of the defendants should be treated merely as the alter-ego of the respective individual defendants. Adherence to the fiction of separate existence of the corporate and entity defendants as an entity distinct from the respective individual defendants would permit an abuse of the corporate provision, would sanction fraud and injustice in that the individual defendants could evade personal liability for their wrongdoing alleged in this Adversary Complaint and could and would continue in the corporate name to perpetuate the fraudulent plan, scheme and device alleged in this

Complaint. The individual defendants failed to respect the separate identity of the corporate and entity defendants among other ways, as follows:

    a. The corporate defendants were created, and are being continued, pursuant to a fraudulent plan, and devised, conceived and operated by the individual defendants to defraud the plaintiff and the general public;

    b. Corporate funds were withdrawn for personal use without treating such withdrawals as salaries or dividends;

    c. The individual defendants and some of them acting jointly and individually commingled their funds with those of the corporate defendants and vice versa; and

    d. The individual defendants and some of them acting jointly and individually at all times herein mentioned, completely controlled, dominated, managed and operated the corporate defendant.

**D. Doe Defendants**

25. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Each of these fictitiously named defendants is in some manner responsible for the events and damages alleged herein and will seek leave of court to amend this Adversary Complaint to show the true names and capacities when the same have been ascertained. Each reference in this Adversary Complaint to "Defendant," "Defendants," or a specifically named defendant refers also to all defendants sued under fictitious names.

26. Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, each of the defendants, as well as DOES 1 through 100, was the principal, agent, representative, partner, joint venture, co-conspirator, alter ego or employee of each of the other defendants, as well as DOES 1 through 100, and in doing the things alleged herein was acting within the course and scope of such relationship with the full knowledge, consent, authority and/or ratification of each of the other defendants and DOES 1 through 100.

///

6
Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers

Case 2:14-bk-22124-SHG Doc 20 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Case 2:16-ap-01127-SHG Doc 1 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Main Document Page 9 of 17
Desc Exhibit 2 Page 7 of 17

## II. JURISDICTION AND VENUE

27. This is an adversary proceeding commenced in this Court, in which the Debtor petitioned for individual Chapter 11 relief, Case No. 2:11-BK-21164 and for relief for all entities under his control under Case No. 2:10-bk-02794. Debtor's individual chapter 11 petition is still pending before this Court thus, this Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. 157 and 1334.

28. Further, this Court also has jurisdiction over this adversary proceeding pursuant to 11 U.S.C 105(a) and 11 U. S.C. 7001(a) and (7).

29. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A), (E), (H), (L).

30. The venue of this Adversary Proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1409.

## III. BACKGROUND FACTS

**A.** *Relevant History*

31. On or around June of 2007, Debtor, personally and by and through an alter ego entity, fraudulently procured a loan of $7.7 million dollars from Plaintiff Diversified Funding Group, LLC for the acquisition and development of a commercial property.

32. The funds for the loan came from ten participating investors, all of whom have been named as individual or entity plaintiffs in this complaint.

33. Upon the maturation of the loan, Debtor defaulted on the note and engaged in a series of delay tactics to prevent Plaintiff from pursuing its legal recourses. Furthermore, shortly thereafter, Plaintiff learned that Debtor had engaged in a scheme to defraud Plaintiff and had used the loan proceeds for his personal use, in direct violation of the terms of the loan agreement.

34. On or around February of 2010, Plaintiff filed suit against Debtor in the Arizona Superior Court, for the County of Maricopa (Arizona Superior Court, County of Maricopa, Case No. CV2010-004194) for breach of contract and fraud.

35. On March 31, 2011, a judgment in excess of $17.7 million ("State Court Judgment") was awarded to Plaintiff and issued against Debtor and other defendants.

///

7
Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers
Case 2:11-bk-21124-SHG Doc 120-2 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Case 2:16-ap-00127-SHG Doc 1 Filed 03/04/16 Entered 03/04/16 14:30:15 Desc
Main Document Page 8 of 17
Exhibit 2 Page 8 of 18

36. On or around July 25, 2011, Debtor petitioned for individual Chapter 11 relief in the United States Bankruptcy Court, District of Arizona, Case No. 2:11-bk-21164 and for relief for all entities under his control, Case No. 2:10-bk-02794.

37. After filing an adversary proceeding, on or around August of 2014, the Court entered a memorandum of decision determining that the debt to Plaintiff was non-dischargeable (Docket 119; Adversary Case No. 2:11-ap-01972).) A true and correct copy of the non-dischargeable judgment is attached hereto as Exhibit "A".

38. Plaintiff thus became the holder of a non-dischargeable judgment now in excess of $23,916,359.14, with interest to accrue at .11% per annum.

39. Ultimately, Debtor's business bankruptcy was closed on the basis that a reorganization plan was "substantially consummated." Debtor's individual bankruptcy case remains open.

40. Debtor is a criminal mastermind who is currently serving time in prison and has for years been involved in criminal conduct including, but not limited to, maintaining more than 100 scam business entities, fraudulently procuring loans, and engaging in identity fraud.

41. While Debtor is incarcerated, he continues to effectuate his fraudulent schemes to shield his assets from creditors and specifically from Plaintiff with the assistance of Defendants.

**B.** *Defendants' Fraudulent Scheme to Fabricate a "Sale" of the Car Wash Business*

42. Defendant HEATHER HENDON, Debtor's daughter, was an officer and part owner of several businesses with Debtor, including a family car wash business.

43. Sometime on or around February of 2014, as a result of a federal raid which uncovered the employment of over 800 illegal immigrants, Debtor was required to divest his ownership interests in the car wash businesses.

44. Defendants HEATHER HENDON, ERNIE GARCIA, VERDE AUTO SERVICES, LLC, VERDE INVESTMENTS, INC., ELLIS RUBENSTEIN, PRUDENTIAL MEDAL AND STEEL SUPPLY, LLC, E MANAGEMENT CONSULTING, AND ALAN MEDA collectively devised an elaborate scheme to fabricate the sale of Debtor's car wash business, in order to improperly receive such assets, income, and or receivables without paying a reasonably equivalent value and in an attempt to hinder, delay, and defraud Plaintiff in its collection efforts.

45. Further, in order to prevent Plaintiff and/or the bankruptcy court from reaching any of Debtor's proceeds from the sale of the car wash business, Defendants and each of them participated as buffers and decoys while personally gaining money, assets and/or other benefits from the fraud.

46. Upon information and belief, in order to effectuate the scam, Defendants arranged to have ERNIE GARCIA, by and through his entities VERDE AUTO SERVICES, LLC, and VERDE INVESTMENTS, INC., (collectively referred to hereafter as "VERDE") act as a "straw man" to conceal the sale profits from the courts and Plaintiff and for the benefit of all Defendants.

47. Defendant ERNIE GARCIA and/or VERDE, purchased three (3) mortgage notes secured by the assets of the car wash business for a substantial discount from the creditors prior to the trustee's sale in Debtor's business bankruptcy case. Exhibit "B".

48. In turn, ERNIE GARCIA and/or VERDE sold the mortgage loans to PACWEST ENERGY, LLC, a joint venture between EQUILON ENTERPRISES, LLC, and JACKSONS FOOD STORES, INC., for a significant profit.

49. Immediately thereafter, ERNIE GARCIA transferred approximately $1,600,000 of the proceeds from the sale of the mortgage notes back to the Hendon family and specifically through HEATHER HENDON, under the guise of two (2) loans.

50. On or around December of 2015, ERNIE GARCIA and/or VERDE transferred approximately $600,000 of the proceeds from the sale of the mortgage notes back to the Hendon family and specifically through HEATHER HENDON. Exhibit "C".

51. On or around April of 2015, Defendant ERNIE GARCIA and/or VERDE transferred an additional $1,000,000 from the proceeds of the sale to Defendant HEATHER HENDON. Exhibit "D".

52. HEATHER HENDON, in turn, used such funds for the benefit of her father and has spent thousands of dollars on his behalf to pay his expenses, bankruptcy trustees' fees, and attorney's fees and for her own personal benefit to the detriment of Plaintiffs.

53. On or around January of 2015 through December of 2015, Defendant ALAN MEDA, Debtor's attorney, through his law firm BURCH & CRACCHIOLO has accepted at least seven (7) wire transfers of approximately $45,000 from HEATHER HENDON to pay for Debtor's legal fees, knowing that said funds are the proceeds from the fraudulent sale of the car wash.

54. Plaintiff is informed and believes and thereon alleges that Defendant ALAN MEDA advised and counseled Debtor to effectuate this bankruptcy fraud.

55. Defendants ERNIE GARCIA, VERDE, HEATHER HENDON, PACWEST ENERGY, LLC, and ALAN MEDA were aware of Debtor's pending bankruptcy and of Plaintiff's non-dischargeable judgment and therefore conspired to devise this scheme, outside the purview of the bankruptcy court, in order to perpetrate a fraud on the court and specifically to preclude Plaintiffs from reaching such assets.

56. Approximately six (6) months prior to the sale of the mortgage notes to ERNIE GARCIA and/or VERDE, HEATHER HENDON, at the request of Debtor, HEATHER HENDON met with a representative of PACWEST ENERGY, LLC to orchestrate this elaborate scheme.

57. After purchasing the three (3) mortgage notes from ERNIE GARCIA, PACWEST ENERGY, LLC, and/or JACKSONS FOOD STORES subsequently acquired all the remaining assets of the company in lieu of foreclosure of the three mortgage notes.

58. Agents of PACWEST ENERGY, LLC, and/or JACKSONS FOOD STORES, were aware of HEATHER HENDON's fraudulent scheme and knowingly participated in such.

59. Upon the consummation of the sale of the car wash business to PACWEST ENERGY, LLC, Defendant HEATHER HENDON was immediately appointed as the vice president of operations and as an agent for certain liquor licenses owned by JACKSON FOOD STORES, INC.

60. Plaintiff is informed and believes and thereon alleges that Defendant HEATHER HENDON continues to act as the alter ego of her father, Debtor DANIEL HENDON, and uses the proceeds from the sale of the car wash business to pay for Debtor's expenses and/or continues to operate the business and derive benefits on his behalf.

61. Defendant HEATHER HENDON currently maintains approximately $510,000 from the proceeds of the car wash business in a bank or investment account operated by LPL Financial. Upon information and belief, these funds are being held directly or indirectly for the benefit of DANIEL HENDON.

*///*

*///*

**10**

Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers

Case 2:14-bk-21124-SHG Doc 20 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Main Document Page 11 of 17

**C.** *Fraudulent Transfers through ELLIS RUBENSTEIN to Daniel Hendon*

62. Defendant HEATHER HENDON has wired approximately $910,000 of the sale proceeds from the car wash to Defendants PRUDENTIAL METAL AND STEEL SUPPLY, LLC ("PRUDENTIAL") and E MANAGEMENT CONSULTING ("E MANAGEMENT") the alter egos of ELLIS RUBENSTEIN.

63. Defendant ELLIS RUBENSTEIN is a friend of Debtor and/or a previous employee of Debtor's car wash business.

64. Defendant HEATHER HENDON transferred the proceeds from the sale of the car wash to Defendant ELLIS RUBENSTEIN under the guise of an "investment" and/or "loan." Exhibit "E".

65. Upon information and belief, ELLIS RUBENSTEIN, through PRUDENTIAL and E MANAGEMENT, is holding the proceeds from the sale of the car wash for the benefit of Debtor.

**D.** *Other Fraudulent Transfers*

66. During Plaintiff's pending adversary proceeding against Debtor, Defendants engaged in a series of transactions to hide and/or obtain Debtor's assets to the detriment of Plaintiff.

67. Defendant HEATHER HENDON was transferred more than 40% of the membership interests in Debtor's business entity Danny's Management Services, LLC in order to preclude Plaintiff from collecting on its judgment.

68. Further on or around September of 2014, Debtor made several transfers to HEATHER HENDON which were used to pay for her lavish wedding. Upon information and belief said sums totaled approximately 1 million dollars.

69. On or around September of 2014, Defendant HEATHER HENDON immediately began transferring her interests in said funds into her living trust, in order that the funds not be reached by Plaintiff.

70. Upon information and belief, Defendant KELLY CARROLL participated in a scam to receive funds from the sale of Debtor's furniture.

71. In his Chapter 11 voluntary petition, Debtor fraudulently disclosed that his personal furniture was only worth approximately $40,000. However, Debtor sold the same furniture in escrow for the sum of $600,000 (the "First Bank Account"). Defendant KELLY CARROLL received

$200,000 in proceeds from the sale of this furniture. Plaintiff is informed and believes and thereon alleges that KELLY CARROLL used the funds to purchase real property located at 6647 E. Morning Vista Lane, Scottsdale, Arizona.

72. Additional transfers to KELLY CARROLL were consummated pursuant to a sham settlement agreement, designed for the purpose of hiding Debtor's assets from Plaintiff.

73. Furthermore, Plaintiff learned that Defendant KELLY CARROLL personally received at least $160,000 from the 7.7 million dollar loan that Plaintiff gave to Debtor, which was only supposed to be used for the development of a commercial property.

74. Defendants NELL HENDON and VICTORIA HENDON, participated in the perpetration of the fraud by receiving assets, monies, and/or title to personal and real property from Debtor.

75. Furthermore, Plaintiff is informed and believes and thereon alleges that Defendant VICTORIA HENDON is holding Debtor's property and assets in various states under various corporate entities to shield their existence from Plaintiff.

76. Defendant ERNIE VASQUEZ, Debtor's car wash manager and "right-hand man," assisted Debtor in implementing his fraudulent scheme by concealing evidence of fraudulent transfers, incriminating communications, and committing perjury to protect Debtor.

77. Defendant ERNIE VASQUEZ received funds from Debtor, disguised as payments for past-rendered services.

78. In a ruse to allow Debtor to transfer large sums of money out of the country, Defendant GIL OLGUIN made false representations to Plaintiff and claimed that he had procured bond financing for Debtor which would be used to pay off the 7.7 million dollar loan owed to Plaintiff. Specifically, GIL OLGUIN maintained that the bond financing was a "done deal."

79. Relying on GIL OLGUIN's representations, Plaintiff refrained from filing a lawsuit to enforce its promissory note and provided Debtor with additional time to pay off the note. Debtor used this additional time to wire large sums of money to accounts outside of the United States which were owned and/or operated by Defendant GIL OLGUIN.

///

**12**
Adversary Complaint for Avoidance and Recovery of Fraudulent Transfers

Case 2:16-ap-01217-SHG Doc 1 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Case 2:14-bk-03112-SHG Doc 120 Filed 03/04/16 Entered 03/04/16 14:39:52 Desc
Main Document Page 13 of 17
Desc Exhibit 2 Page 13 of 18

80. On or around August of 2014, Debtor's girlfriend, Defendant MARIA BARKER received at least $100,000 from Debtor in order to preclude Plaintiff from recovering such funds. Defendant MARIA BARKER cashed four checks from Debtor which originated from the First Bank Account.

81. In an effort to hide other assets from Plaintiff, Defendant MARIA BARKER received thousands of dollars from Debtor and used it to prepay rent for a home located in Corona Del Mar, California. Debtor resides at this address. Further, to elude creditors and Plaintiff, MARIA BARKER goes by various names, one such name is Priscila De Leon.

82. Defendants KELLY CARROLL and JAY SWART, a longtime friend of Debtor, engaged in a series of secret transactions disguised as loans whereby JAY SWART would appear to be a secured creditor in various assets belonging to Debtor. Defendants' actions were purposefully designed to keep Debtor's assets out of reach of creditors in his individual bankruptcy case and specifically Plaintiff.

83. Among other assets, Plaintiff is informed and believes and thereon alleges that Debtor transferred a Ferrari to Defendant JAY SWART without adequate compensation and in an effort to hide such asset. Upon information and belief, Defendant JAY SWART is holding the Ferrari for the benefit of DANIEL HENDON.

84. Defendant ALAN MEDA, Debtor's counsel, actively assisted Debtor in providing legal advice to further Debtor's fraudulent schemes and in violation of the rules of professional conduct.

85. All of the aforementioned transfers were made without adequate compensation and were done for the sole purpose of hiding such assets from the bankruptcy courts.

## FRAUDULENT TRANSFER – 11 U.S.C. 548 and 550
### (Against all Defendants and DOES 1-100)

86. Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

87. At all times relevant to this lawsuit, Plaintiff was a creditor and had a right of payment from DANIEL HENDON for at least $7.7 million dollars.

88. Plaintiff is informed and believes and thereon alleges that at all times relevant to this lawsuit, DANIEL HENDON, working in conjunction with Defendants, systematically transferred his assets, income, and/or receivables to the entity and individual Defendants named herein for the specific purpose of avoiding collection of the debts owed to creditors and Plaintiff.

89. Plaintiff is further informed and believes and thereon alleges that as a result of each transfer, DANIEL HENDON became insolvent.

90. Plaintiff is informed and believes and thereon alleges that DANIEL HENDON divested himself of the income, assets, and/or property described herein without receiving adequate value by conveying it to friends and family in order to leave the Debtor without sufficient assets to repay creditors.

91. Plaintiff is informed and believes and thereon alleges that DANIEL HENDON'S alleged divestiture from the car wash business was a sham and that DANIEL HENDON continues to have an ownership interest in the car wash business either directly or indirectly and continues to receive benefits including income and assets.

92. Plaintiff is informed and believes and thereon alleges that Defendants' actions were taken willingly, intentionally, and knowingly in violation of Plaintiffs' rights and with the actual intent to hinder, delay and defraud Plaintiff in its attempt to collect on its non-dischargeable judgment.

93. Plaintiff is informed and believes and thereon alleges that Defendants assisted or participated in DANIEL HENDON'S scheme to form multiple business entities in order to hide assets and/or shift funds between different entities and/or persons, thereby avoiding mounting judgments and the debt owed to Plaintiff.

94. Plaintiff is informed and believes and thereon alleges that Defendants intentional acts were designed to disrupt and frustrate Plaintiff's ability to receive performance of DANIEL HENDON'S obligations in his individual Chapter 11 bankruptcy.

95. As a direct, legal, and proximate result of Defendants' fraudulent transfers, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

96. The aforementioned conduct was willful, wanton, malicious and oppressive and was undertaken with the intent to defraud Plaintiff and justifies an award of exemplary and punitive damages.

97. As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

98. Plaintiff is moreover entitled to an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

## **VIOLATIONS OF 18 U.S.C. §1962 (CIVIL RICO)**
### (**Against All Defendants and DOES 1-100**)

99. Plaintiff refers to each of the foregoing paragraphs in their entirety, and hereby incorporates them by reference as though fully set forth herein.

100. Plaintiff is informed and believes and thereon alleges that Defendants' secretly, surreptitiously and illegally formed a scheme and Association-in-Fact Enterprise within the meaning of 18 U.S.C. §1962(2). The affairs of the Enterprise were participating in and conducted through a pattern of racketeering activity as herein alleged.

101. Plaintiff is informed and believes and thereon alleges that Defendants' developed several individual formats of corporations and/or considered actions which were used to achieve the objective of the Enterprise. These schemes, all of which were engaged in for the purpose of financial gain and benefit of the Defendants, included:

102. The operation of undercapitalized and shell corporations through which said Defendants could accomplish the objectives of the Enterprise at no risk to the assets of the individual shareholders, officers and directors of said shell corporations;

103. The use and manipulation of multiple corporate entities, to accomplish the objectives of the Enterprise at no risk to the assets of the individual shareholders, officers and directors of said shell

corporations, and without divulging accurate information to those entities with which they conduct business;

104. Wire fraud;

105. The use of deception to undermine investigations of Defendants' activities;

106. Bankruptcy fraud;

107. Abuse of the legal system;

108. Laundering of monetary instruments;

109. Each of the violations by the Defendants herein constitute an incident of "racketeering activity" as defined by 18 U.S.C. §1961 and §1962.

110. The multiple acts of racketeering activity by the Defendants may be interrelated but part of a common and continuous pattern of fraudulent schemes perpetrated for the same or similar purpose, thus constituting a "pattern of racketeering activity" as defined by 18 U.S.C. 1961.

111. Plaintiff has been directly injured by the wrongful acts of Defendants by reason of their violations of 18 U.S.C. §1962.

112. As such, Plaintiff is entitled to have their actual damages trebled and have a constructive trust imposed upon all proceeds resulting from Defendants' fraudulent and unlawful conduct; recover costs of investigation of the fraudulent scheme; and attorneys' fees incurred hereinabove; and a forfeiture by the Defendants of all their wrongfully acquired assets and income.

113. As a direct, legal, and proximate result of the aforementioned conduct, Plaintiff has suffered, and will continue to suffer, substantial general and special damages in an amount according to proof.

114. The aforementioned conduct was a substantial factor in causing harm to Plaintiff and was conduct that was oppressive, fraudulent, and malicious, and subjected Plaintiff to cruel and unjust hardship in a willful and conscious disregard of their rights. As such, Plaintiff is entitled to an award of punitive damages at trial.

115. As a direct and proximate result of the foregoing unlawful, unfair or fraudulent acts and practices by Defendants and DOES 1 through 100, inclusive, and each of them, Plaintiff is entitled to injunctive relief prohibiting such acts or practices from hereinafter continuing.

116. Plaintiff is moreover entitled to an order of restition, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds they received or derived, directly or indirectly, as a result of such unlawful, unfair or fraudulent business acts and practices.

## **REQUEST FOR RELIEF**

Wherefore, plaintiff prays as follows:

For treble damages pursuant to 18 U.S.C. §1964;

For general, special and consequential damages according to proof;

For an award of exemplary and punitive damages;

That this Court enter an order for injunctive relief prohibiting such acts or practices from hereinafter continuing.

That this Court enter into an order of restitution, requiring Defendants and DOES 1 through 100, inclusive, and each of them, to disgorge any and all funds that they received or derived as a result of the fraudulent transfers.

That this Court award Plaintiff such other relief that the Court deems just and proper including but not limited to the recovery of personal and real property fraudulently transferred to other third parties in an attempt to hinder, delay or defraud Plaintiff.

Dated:  March 4, 2016   **WILSON KEADJIAN BROWNDORF, LLP**

_____
Marc Lazo
Attorney for Plaintiff