**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Telephone: 602.262.5311

**Susan M. Freeman** (State Bar No. 004199 )
 Direct Telephone: 602.262.5756
 Direct Facsimile: 602-734-3824
 Email: sfreeman@lrrc.com

**Robert H. McKirgan** (State Bar No. 011636)
 Direct Telephone: 602.262.5396
 Direct Facsimile: 602.734-3874
 Email: rmckirgan@lrrc.com

**Justin J. Henderson** (State Bar No. 026930)
 Direct Telephone: 602.262.5738
 Direct Facsimile: 602.734.3937
 E-mail: jhenderson@lrrc.com

*Defendants Ernie Garcia, Verde Investments, Inc. and*
*Verde Auto Services, LLC*

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| DANIEL LEWIS HENDON | Case No. 2:11-bk-21164-SHG |
| Debtor. | **VERDE PARTIES' TRIAL BRIEF RE: SALE OF CERTAIN LIQUIDATING TRUST ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTEREST** |
| | Hearing Date: July 25, 2016 |
| | Hearing Time: 1:00 p.m. |
| | Location: 38 S. Scott Ave., Tucson, AZ, Room 329 |

Ernie Garcia, Verde Investments, Inc. and Verde Auto Services, LLC (collectively, "Verde" unless the context establishes otherwise) file this trial brief with respect to the motion by the Liquidating Trustee appointed under the confirmed reorganization plan in this case to sell avoidance actions and other causes of action alleged by Diversified Funding Group, LLC and its owners [DE 180] (the "Sale Motion" and the "DFG Adversaries Claims"), and the overbid by Verde which would settle such

litigation claims.  The Sale Motion also sought authority to sell causes of action asserted in the "Trust Adversaries" as defined in the Sale Motion. Verde is willing to offer cash to acquire the Trust Adversaries and settle them too.

**Preliminary Note: Verde's Counsel Is Not Disqualified to Represent Verde**

Diversified has raised as a "preliminary matter" at the beginning of its untimely brief on Trustee standing an allegation that Lewis Roca Rothgerber Christie LLP ("Lewis and Roca" or the "Firm") "should be recused from any further representative efforts in this matter and Verde should be ordered to retain new counsel forthwith."  [DE 206 p. 2].  Diversified has not filed a motion to disqualify the Firm, but has indirectly sought that relief in the unorthodox form of a preliminary statement to a brief.

**A.  The Representation of Verde Is Not Substantially Related to the Firm's 2006 Minor Representation of Diversified.**

When Verde Investments approached Lewis and Roca about representation in connection with Diversified's allegations of liability, the Firm performed a conflicts check.  Firm files showed that a former Lewis and Roca partner, Tom Morgan, was engaged in 2006 to advise Diversified with respect to whether its loan documents complied with securities regulatory laws.  However, the proposed representation was short-lived, and so minor that not a single invoice for work performed was even sent.

Representation of the Verde entities and their owner Ernie Garcia in this 2016 matter involves the defense of Diversified's claims that Verde's 2014 purchase and sale of mortgage notes and its loans alleged to be of sale proceeds constituted fraudulent transfers.  There is no counterclaim or even any issue about Diversified's loan documents complying with securities laws.  Diversified holds a judgment against Danny Hendon, and the underlying merits of Diversified's loan claims were adjudicated long ago without any involvement by Lewis and Roca.

In his declaration supporting Diversified's allegations of a disqualifying conflict, Mr. Perez says that he disclosed confidential information about Diversified's "lending practices, loan structures, underwriting procedures, collection methodology, non-performing loan workouts and structuring compliance to various securitization requirements." [DE 206 Ex. 1 ¶ 4].  Diversified is not being sued by

Lewis Roca ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Verde. Diversified's lending practices and other topics said to have been disclosed are not at issue in the Verde representation. They are not relevant to whether Verde made a fraudulent transfer or participated in a conspiracy to defraud Danny Hendon's bankruptcy estate or creditors. There is no substantial risk that any such confidential information would materially aid Verde in its defense of the Diversified lawsuits.

Accordingly, the former limited matter for Diversified is not "substantially related" to Lewis and Roca's present representation of Verde, as required for disqualification under Arizona Rule of Professional Conduct ER 1.9. A "factual nexus" must exist between the prior matter and the current matter to constitute a substantial relationship, meaning that "the matters *themselves* must be substantially interrelated." *Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 377 ¶ 28 (App. 2005), quoting Ariz. State Bar Comm. on Rules of Prof'l Conduct Ethics Op. 94-06 (1994). That simply is not the case with Lewis and Roca's Verde representation.

**B.    Diversified Has Waived any Grounds for Disqualification.**

Susan Freeman's notes of her first one-on-one telephone conversation with Marc Lazo in this case are attached as **Exhibit 1** (first page only). It took place 50 days ago on June 1, 2016. Mr. Lazo said, among other things, that Diversified has "great respect for us; L&R represented DFG years ago; no conflict tho".

Diversified has known about Lewis and Roca's 2006 work for Diversified from the beginning of the Firm's involvement, and never raised any concern while Firm lawyers devoted many long hours to learning the facts of the dispute, researching the law, preparing court filings, and facilitating and participating in a full-day mediation. Diversified not only admitted that there is no conflict on the part of Lewis and Roca, but it waived the right to assert the disqualification claims it is raising now. *See Amparano*, 208 Ariz. at 378, ¶¶ 32-33. When Diversified's counsel Mr. Lazo first raised its allegation of a conflict on Tuesday night, July 19, 2016, and Verde's Ms. Freeman pointed this out, Diversified did not deny the conversation. **Exhibit 2.**

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

"[M]otions to disqualify an opposing party's attorney are disfavored and are viewed with suspicion." *State v. Serna*, 163 Ariz. 260, 268, 787 P.2d 1056, 1064 (1990). When ruling on a motion to disqualify opposing counsel, the trial court generally must consider "whether the motion is being made for the purposes of harassing the [opposing party]." *Burch & Cracchiolo, P.A. v. Myers*, 237 Ariz. 369, 377, ¶ 28 (App. 2015) (quoting *Alexander,* 141 Ariz. 157, 165 (1984)). Disqualification motions cannot "be manipulated for strategic advantage on the account of an impropriety which exists only in the minds of imaginative lawyers." *Alexander*, 141 Ariz. at 165 (quoting *Woods v. Covington County Bank,* 537 F.2d 804, 819 (5th Cir. 1976)). "To call for the disqualification of opposing counsel for delay or other tactical reasons, in the absence of prejudice to either side, is a practice which will not be tolerated." *Cottonwood Estates v. Paradise Builders*, 128 Ariz. 99, 105 (1981).

In *Alexander*, the Arizona Supreme Court concluded that the disqualification motion was made for the purpose of harassment where obtaining a new attorney and bringing the attorney "up to date" would cause a much greater expense and the movant did not show that it would be damaged if the motion was not granted. 141 Ariz. at 165. The Court pointed out:

> Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent [citations omitted]. The burden should be upon the moving party to show sufficient reason why an attorney should be disqualified from representing his client.

*Id.* at 161.

The Court vacated the order disqualifying counsel in *Alexander* because the movant "appears to be using disqualification as a tactical tool." 141 Ariz. at 165. Diversified is doing the same, requesting an order directing that Lewis and Roca be recused and that Verde be required to obtain new counsel nearly two months after acknowledging the prior representation, in the midst of litigation and on the eve of this Court's hearing on Diversified's and Verde's conflicting bids to buy the Trustee's causes of action. Diversified has not met its burden of proving that Lewis and Roca should be disqualified.

# I. Legal Principles Relevant to the Sale and Settlement Analysis

## A. Section 363 Sale Standards.

1. During the initial Sale Motion hearing on July 15, 2016, the relevant parties in interest have acknowledged that the Liquidating Trustee appointed pursuant to the confirmed Amended and Restated Joint Plan of Reorganization dated December 12, 2011 in this individual Chapter 11 case and the jointly administered cases of affiliated "Car Wash Entities" (the "Plan") [Dkt. #1516] has authority to sell the DFG Adversaries Claims. The Trustee's authority to sell such causes of action has been briefed by Verde and Trustee; Diversified filed nothing. [DE 204, 205].

2. A trustee's ability to sell avoidance actions and estate causes of action to a third party where the trustee will retain no litigation strategy or settlement authority is contrary to fundamental bankruptcy principles. Verde has contested the Trustee's ability to sell the DFG Adversaries Claims to Diversified for this reason. [DE 193].

3. "[A]s a prerequisite to obtaining sale authorization, the trustee need[s] to demonstrate that the proposed sale would yield optimal value for the bankruptcy estate." *In re Zuercher Trust of 1999*, 2016 WL 721485, at *10 (9th Cir. BAP Feb. 22, 2016); *see also In re Fitzgerald*, 428 B.R. 872, 884 (9th Cir. BAP 2010) (court has the "ultimate responsibility to assure that optimal value is being realized by the estate." A sale for a 10% recovery does not assure optimal value, and is an inadequate offer for estate avoidance actions, as set forth in Verde's opposition to the Sale Motion. [DE 193]. Diversified would "basically [be] pocketing" other creditors' shares of the estate. *In re Starr*, 2012 WL 2921375, at *3 (Bankr. N.D. Ohio July 17, 2012). Although the Ninth Circuit BAP has upheld a percentage-recovery component to an offer, there must first be a "guaranteed minimum recovery for the estate (a 'price')." *See In re Mickey Thompson Entm't. Group, Inc.*, 292 B.R. 415, 422 (9th Cir. BAP 2003).

4. When deciding whether one offer is "higher and better" than another, the Trustee (and ultimately, the Court) is "permitted, and in fact [is] encouraged, to evaluate other factors such as

201 East Washington Street, Suite 1200 — Phoenix, AZ 85004-2595 — Lewis Roca ROTHGERBER CHRISTIE

contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing." *In re Family Christian, LLC*, 533 B.R. 600, 622 (Bankr. W.D. Mich. 2015); *see also Lawsky v. Condor Capital Corp.*, 2015 WL 4470332, at *9 (S.D.N.Y. July 21, 2015) (approving receiver's selection of bid over "facially higher bid because [higher bid's] contingencies, uncertainties, and the additional requirements imposed by the structure made it less valuable and more burdensome than the offer submitted by the Successful Bidder"); *In re Bakalis*, 220 B.R. 525, 529, 532 (Bankr. E.D.N.Y. 1998) (trustee properly considered "total purchase price, closing risks, and the anticipated time required to complete the transaction").

5.      An all-cash offer is better than a contingent offer.  *See In re Scimeca Found., Inc.*, 497 B.R. 753, 779 (Bankr. E.D. Pa. 2013) ("[I]t was within the trustee's sound business judgment to accept a somewhat lower all-cash offer with no contingency."); *In re Nissley*, 2015 WL 6556983, at *2 (Bankr. M.D. Pa. Oct. 29, 2015) (approving trustee's acceptance of lower cash offer when higher offer was subject to contingencies); *In re Volpe Indus., Inc.*, 2013 WL 4517983, at *6 (D. Mass. Aug. 23, 2013) (accepting lower bid where higher bidder refused to make a deposit or provide other assurances that it could close because "the most prudent course was to 'elect[] the bird in the hand'"); *In re JL Bldg., LLC*, 452 B.R. 854, 860 (Bankr. D. Utah 2011) (acceptance of bid was proper "particularly in light of the fact it [was] a cash offer with no contingencies"); *In re After Six, Inc.*, 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (approving higher cash offer where party making lower offer did not prove value of promise to employ debtor's former workers or demonstrate "the prospects of a higher recovery [in litigation]" if lower offer were approved).

6.      It is improper for a trustee to take a "substantial gamble for the estate" where the estate could "be left with an asset of lesser value to remarket and sell." *Bakalis*, 220 B.R. at 531. *Family Christian* approved the debtor's rejection of a bid where the debtor "repeatedly expressed a desire for [the potential buyer] to provide a minimum value that would be provided to the estate if its bid were chosen as the winning bid," but the buyer refused to do so. 533 B.R. at 624; *see also Nissley*, 2015 WL

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

6556983, at *2 ("[T]he Trustee can hardly be faulted for accepting a 'bird in the hand' rather than an offer subject to uncertain contingencies."). Diversified's all-contingency offer is a gamble that would be no different from the trustee going to the casino and putting all of his chips on Black. It also shows that Diversified's confidence in its own lawsuit is low. If it thinks that its lawsuits have real value, Diversified should put its money where its mouth is.

**B.     Settlement Standards.**

1.     When causes of action are sold to a litigation defendant, it is treated as a settlement. *In re Lahijani*, 325 B.R. 282, 290-91 (9th Cir. BAP 2005). The bankruptcy court evaluates: (a) probability of success in the litigation; (b) collectability; (c) complexity, expense, inconvenience, and delay attendant to continued litigation; and (d) the interests of creditors, which are said to be "paramount." *Id.* at 290 (citations omitted).

2.     When the purchase price includes a contingent recovery, the court evaluates its value as follows:

> An economist would place an "expected value" on such a proposition and discount it to "present value," based on a calculation that, in its simplest form, is the product of the possible result, multiplied by the probability of achieving the result, discounted to present value. The crucial point for purposes of the present analysis is that, so long as the pertinent probability is not zero, the expected and present value calculation will yield some value. Any such value should be taken into account.

*Id.* at 289-90 (footnote omitted).

A litigation defendant offering to buy a bankruptcy estate's claims against it is exercising a court-approved method of settlement of its dispute, recognized in *Lahijani*, 325 B.R. at 290 and *Mickey Thompson*, 292 B.R. at 420-21. Defendants do not need to hold claims in order to settle in that manner, and no case has so held. The fact that offering to buy an estate's lawsuit claims against oneself as a defendant is approved in this Circuit establishes that such a bid does not constitute misconduct, unclean hands, fraud or collusion constituting bad faith that disqualifies the defendant from bidding, as claimed by Diversified in its brief on Trustee ability to sell claims. [DE 206 at 10, 12-15]. Diversified relies on its allegations of Verde fraud in its complaints to claim that Verde is a bad faith bidder. [*Id.* at 12-15].

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

As explained below, that is far from accurate, but whatever the allegations, they do not turn Verde's offer to settle through purchasing the Trustee's claims into a bad faith offer. Diversified has no authority to support its argument; there is none.

Rather, as set forth in the *Thomas* case on which Diversified relies, "good faith" of a purchaser is determined first by determining whether there is an identifiable purchaser, and whether the purchaser gives value. *In re Thomas*, 287 B.R. 782, 785 (9th Cir. BAP 2002). The court then evaluates whether there is fraud in the bidding, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders. *Id., citing In re Southwest Prods., Inc.*, 144 B.R. 100, 102-03 (9th Cir. BAP 1992). A defendant offering cash to settle what is believed to be a baseless fraud lawsuit against it to avoid litigation costs and risks is not fraudulent, and indeed there is voluminous authority approving such settlements/sales over significant objections (including *Lahijani*). There is adversity, not collusion, between Verde and Diversified, the only bidders here. Offering cash is by no means an attempt to take grossly unfair advantage of a bidder offering a contingent portion of an uncertain recovery. Rather, as set forth in the cases cited above, that is appropriate and in the best interest of the estate.

As noted in the *Lahijani* case on which Diversified relies extensively, bidders can object to sale terms and appeal when disappointed in the sale results if they are also creditors. *Lahijani*, 325 B.R. at 290 n. 13 ("[D]isappointed prospective bidders *who are not creditors* usually do not have standing to appeal." (emphasis added)); 3 *Collier on Bankruptcy* ¶ 363.02[1][d], at 363-14 (16th ed. 2016) ("Where the disappointed bidder is also a creditor, who has standing to object to the sale independent of its role as a bidder, participating in the auction does not waive the bidder-creditor's right to object to the sale."). Unsecured creditors are Liquidating Trust beneficiaries, are entitled to Trust distributions once the Trust has sufficient assets to satisfy higher priority claims, and thus have standing to be heard on Trust sales. Ernie Garcia and Verde are unsecured creditors, holding allowed claims acquired pursuant to

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Bankruptcy Rule-authorized procedures. Bankruptcy Rule 3002(e)(2). [DE 190, 191]. They have standing to object to the sale to Diversified, and need no standing to overbid.

Moreover, bidders have standing even without being creditors if there are irregularities in the bidding process, such as attempts to exclude other bidders or other actions by the successful bidder that chill bidding (thus rendering the successful bidder "not a good faith purchaser"). *In re Colony Hill Assocs.*, 111 F.3d 269, 273-74 (2d Cir. 1997) (noting that the general "rule denying standing to unsuccessful bidders is not absolute" and that unsuccessful bidder has standing if bidding process is unfair, such as when there is a conspiracy to exclude "the highest bidder . . . from participating in the sale hearing" and the buyer "was not a good faith purchaser"); *Dick's Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc.*, 212 B.R. 283, 289 (N.D. Ohio 1997) (unsuccessful bidder had standing insofar as it "allege[d] that the sale was not made in good faith"); *In re New Energy Corp.*, 2013 WL 1192664, at *3 (N.D. Ind. Mar. 22, 2013) (general rule preventing outsiders from challenging sale "isn't absolute" and "[u]nsuccessful bidders can challenge the equity of a bankruptcy sale transaction").

Diversified's attempts to bully the Trustee into selling the causes of action to Diversified for a pure contingency with no cash component falls within this exception. So does its new attempt to effectively exclude Verde from participating in the sale process by requesting that its counsel be removed. *See also Lawsky v. Condor Capital Corp.*, 2015 WL 4470332, at *13 (S.D.N.Y. July 21, 2015) (noting that bidder's threats of "legal action against the Receiver, his law firm, and any successful bidder other than the Losing Bidder" had a "negative effect on the sale process"). Verde is the one participating in this sale in good faith.

## II. Diversified's Probability of Success

### A. Overview of Relevant Evidence

3. Verde's public mediation statement is attached as **Exhibit 3**. It briefly describes Verde's understanding of the relevant facts underlying the DFG Adversaries Claims that will constitute the evidence on which Diversified will attempt to prove its case. The Court will hear Ernie Garcia testify,

LEWIS ROCA
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

and observe that he is credible and his testimony makes business sense, and completely eviscerates Diversified's claims of fraud and conspiracy.

**B.  Applicable Legal Principles**

4.  In the context of evaluating alternative bids, this Court is to focus on whether the possible result of Diversified achieving and collecting a recovery exceeding $2 million, multiplied by the probability of achieving that result, discounted to present value after the time it would take to accomplish and further discounted by the 10% contingency percentage offered by Diversified, exceeds Verde's offer of $200,000 in cash today.  Verde contends that the probability of Diversified obtaining any judgment against a "collectible defendant" (Verde and/or PacWest) is remote, including because of the legal flaws in its theories noted in this section; that the damages amount at issue is really only $100,000 or at best $600,000; and that Diversified's litigation road will be lengthy and challenging.  Its 10% contingency offer does not come close to $200,000 in cash today.  Recovering cash without litigation risks or delays is in the best interest of creditors, the paramount concern of the Court.

1.  <u>Danny Hendon Transferred Nothing</u>

5.  Diversified's claims rest largely on allegations of fraudulent transfers by Danny Hendon. The Trustee is the one with standing to pursue the DFG Adversaries Claims, but there are no claims that even the Trustee could pursue because Danny Hendon transferred nothing.

6.  Verde purchased mortgage loans from investors who purchased the same loans from the Car Wash Entities' secured creditors; Danny Hendon had no interest in those mortgage loans or in the property that secured the mortgage loans.  Verde subsequently sold those loans to another third party, PacWest; Danny Hendon was again not the transferor.  Even the deeds in lieu of foreclosure to PacWest were by the Car Wash Entities that owned the collateral being transferred, not Danny Hendon.

7.  Diversified's claims rest on the premise that Danny Hendon had an equity interest in the Car Wash Entities and that equity interest had value for Danny's creditors.  The market value of the mortgage notes purchased and sold by Verde was established through arm's length negotiations and

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

substantial due diligence, and was less than the amount owed on the notes by millions of dollars. The full amount due on the secured notes would have to be paid, along with substantial delinquent tax claims, administrative expenses, and unsecured claims (the Car Wash Entities' plan liabilities) as set forth in the attached shared mediation statement, before Danny Hendon's bankruptcy estate would recover anything. And, contrary to Diversified's theories, the Danny Hendon bankruptcy estate could not pierce through the entity veil of the Car Wash Entities or establish their alter ego liability. The Car Wash Entities were discharged from any such pre-confirmation claims under the Plan, and during their cases and post-confirmation operated under the supervision of the Court and the post-confirmation Plan Agent, Chris Linscott, who reported regularly to the Court until the Entities' cases were closed after Verde bought the mortgage notes.

8.       Similarly, Diversified's claims to recover money that Verde loaned to Heather Hendon also fail because Danny Hendon and his bankruptcy estate had no right or interest in Verde's profit from its purchase and resale of the mortgage loans. Verde could give the money away or loan it to anyone in its sole discretion because Diversified had no legal or equitable interest in that money (and neither did the Trustee). Under the confirmed Plan, Danny Hendon could receive gifts and loans and earn consulting fees; he just had to meet his obligations to pay $10,000 each month to the Trustee and obtain the promissory note the Trustee and Hendon have been discussing in this Court in connection with conversion motions. So even if he had an interest in some portion of Verde's loans to Heather Hendon, investing it and using it to meet administrative expenses, Plan obligations and living expenses does not establish a transfer of Danny Hendon's assets, or a fraudulent transfer (let alone any liability on the part of Verde as lender to Ms. Hendon).

2.       Flaws in Diversified's Fraudulent Transfer Claims

9.       Bankruptcy Code § 548, asserted by Diversified, only applies to prepetition transfers. Diversified has not alleged a cause of action under Code § 549.

10. Code § 548 permits a trustee to avoid a transfer of "an interest of the debtor in property" and § 549 only permits avoidance of a transfer of "property of the estate."

11. To the extent Diversified's claims are based upon the Car Wash Entities transferring property via a deed-in-lieu, Verde was not the transferee. Likewise, it was the transferor, not transferee of funds loaned to Heather Hendon. Recovery of fraudulent transfers can only be obtained from transferees under Code § 550. *E.g. In re Christian & Porter Aluminum Co.*, 584 F.2d 326, 338-39 (9th Cir. 1978) (under Bankruptcy Act, recovery is only available "against persons who have 'received' the property in question"); *In re Saraland, LLLP*, 2014 WL 555805, at *5 (Bankr. S.D. Ga. Jan. 17, 2014) ("[T]he Trustee cannot recover from the transferor.").

12. Debtor Danny Hendon's involvement in the transactions bars a fraudulent conveyance claim on *in pari delicto* grounds. *In re Crown Vantage, Inc.*, 2003 WL 25257821, at *6 (N.D. Cal. Sept. 25, 2003), *aff'd Crown Paper Liquidating Trust v. Pricewaterhousecoopers LLP,* 198 Fed. Appx. 597 (9th Cir. 2006) ("We affirm for the reasons set forth in the well-reasoned district court orders . . . .").

### 3. Flaws in the RICO Claims

1. RICO elements must be established separately as to each defendant; Diversified cannot tar Verde with alleged wrongdoing by other defendants. *E.g. Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008); *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987); *see also Vaughn v. Air Line Pilots Ass'n Int'l*, 395 B.R. 520, 553 (E.D.N.Y. July 24, 2008) (dismissing complaint alleging bankruptcy fraud as a predicate offense because it failed to explain how the particular defendant committed the alleged criminal act). Diversified must, but cannot, satisfy the heightened pleading requirements of Rule 9(b) for fraud of each individual defendant. *See Mostowfi v. i2 Telecom Int'l, Inc.*, 269 Fed. Appx. 621, 623 (9th Cir. 2008); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

2. RICO claims asserting postpetition acts to "conceal assets belonging to the bankruptcy . . . estate[] . . . for the purpose of obstructing the payment of . . . creditors" may only be asserted by the

Lewis Roca
ROTHGERBER CHRISTIE
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

2010607377_1                                                                                    2010565916_1

Trustee. *Estate of Spirtos v. One San Bernadino Cnty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1174-76 (9th Cir. 2006). As noted above, Diversified cannot buy the Trustee's standing.

3.     Diversified has not alleged a cognizable RICO injury, either as to injury to its "business or property" or as to proximate cause. "Financial losses, in and of themselves, are insufficient to confer standing under RICO." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005). Diversified had no specific interest in any of Danny Hendon's property, and at best only an expectancy interest in him having enough money to pay his creditors, which is insufficient for RICO damages. *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1091 (C.D. Cal. 2011). In order to establish proximate cause, Diversified must and cannot show some "*direct* relation between the injury asserted and the injurious conduct alleged." *Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992) (emphasis added).

4.     Diversified must, but cannot, show a pattern of racketeering activity, which cannot be met by "mere association with an enterprise." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985). "At a minimum, a 'pattern' requires that the predicate criminal acts be 'related' and 'continuous.'" *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). The pattern component is evaluated "with respect to each defendant individually." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). There is no open-ended continuity because the last act alleged by Verde took place over a year ago. *Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004). There is no closed-end continuity because the events took place over only a few months. *E.g. Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 2012 WL 713289, at *10 (N.D. Cal. Mar. 5, 2012) (less than 1 year insufficient); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (less than 2 years insufficient).

Lewis Roca ROTHGERBER CHRISTIE    201 East Washington Street, Suite 1200    Phoenix, AZ 85004-2595

5.     Diversified also must prove an "enterprise," including "both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'"  *Odom*, 486 F.3d at 551-52.   An "association-in-fact enterprise [as alleged by Diversified] requires more than parallel conduct; it requires relationships among those associated with the enterprise, and it requires those associated with the enterprise to 'function as a unit, that they be 'put together to form a whole.'" *Target Corp. v. LCH Pavement Consultants, LLC*, 2013 WL 2470148, at *4 (D. Minn. June 7, 2013). "The allegation that each [defendant] was aware that there were likely other [defendants] engaged in parallel schemes is insufficient to establish an association-in-fact RICO enterprise."  *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 184 (D. Mass. 2003). Assertions of "common fraudulent purposes and plans" are insufficient "absent allegations as to how the members [of the alleged enterprise] were associated together in an 'enterprise.'" *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993).  Diversified has nothing more.

6.     Diversified cannot prove a predicate offense of racketeering activity.   Among other elements, it has inadequately alleged (through broad group conclusory statements) and cannot prove Verde's "specific intent to defraud" needed for wire fraud and bankruptcy fraud.   *United States v. McNeil*, 320 F.3d 1034, 1040 (9th Cir. 2003) (wire fraud); *First Capital Asset Mgmt.*, 385 F.3d at 178-79 (bankruptcy fraud). Nor was any of *Diversified's* property taken through the alleged wire fraud scheme, as required to state a claim. *Cleveland v. United States*, 531 U.S. 12, 26 (2000).  Nor did Verde conceal property held in trust for debtor Danny Hendon as required for a non-debtor bankruptcy fraud claim. *Stuhley v. Hyatt*, 667 F.2d 807, 809 n.3 (9th Cir. 1982).

7.     Diversified's money laundering theory of RICO liability fails because Verde's purchase and sale of mortgage notes was not an illegal activity – not "dirty" money that could be "laundered." Diversified must and cannot prove that Verde "(1) engaged in a financial transaction which involved proceeds from specified illegal activity, (2) knew the proceeds were from illegal activity, and (3)

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

intended the transaction either to promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds." *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir. 1996).

8.     Diversified's RICO claims are subject to dismissal on *in pari delicto* grounds like its fraudulent transfer claims. *Crown Vantage,* 2003 WL 25257821, at \*6; *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006) (RICO suit).

### 4.     Fraudulent Concealment Fails for Lack of Fraud and Lack of Concealment

9.     Fraudulent concealment, alleged in Diversified's California complaint, occurs when one party to a transaction conceals or otherwise prevents the other party from acquiring material information. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 496 (2002).  It requires allegations demonstrating that the defendant was under a legal duty to disclose facts. *Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 182 Cal. Rptr. 3d 888, 909 (App. 2015).  Verde had no such duty to Diversified.

10.     Moreover, Verde's purchase of secured notes was not concealed; it was reported repeatedly to this Court. [DE 2015 in the Main Case (minute entry discussing Verde's possible investment in assets of Danny's Car Wash); DE 2018 in the Main Case (minute entry discussing Verde's purchase of "secured positions"); DE 2032 in the Main Case (minute entry stating that Verde had purchase all of the secured debt, all of which was in default); DE 2064 (Plan Agent's Status Report on outstanding debt when Verde acquired the mortgage notes).]  The transfers of deeds of trust securing the mortgage notes both to and from Verde were publicly recorded.

11.     The fraudulent concealment causes of action are also barred by *in pari delicto.  Crown Vantage,* 2003 WL 25257821, at \*6.

### 5.     Civil Conspiracy

12.     Diversified theorizes that the defendants conspired to fraudulently divest Danny Hendon of the car wash business.  Diversified's fundamental (and flawed) notion is that PacWest bought the Car Wash Entities' business for less than its fair market value.  It claims that Verde did little due diligence,

bought the mortgage loans at an egregiously under-market price to flip those loans at a profit, then gave $1.6 million back to the Hendons and arranged for Heather Hendon's salary to be doubled as a sweetener, all in a grand conspiracy to defraud Diversified. (The documents subpoenaed from Verde include extensive due diligence and legal work on the documentation of the purchases of the mortgage loans).

13.     The market value of the mortgage loans was determined through negotiations between Verde and the three separate sellers of the mortgage loans, investors who previously bought the notes from the secured lenders to the Car Wash Entities, and later between Verde and its mortgage loans purchaser, PacWest. Those transactions were arms-length transaction and there is no evidence to the contrary. Diversified's theory presumes that the holders of the secured mortgage loans agreed to sell them to Verde for less than fair market value, with no rational basis or evidence for such a vast conspiracy. Similarly, Diversified contends that PacWest was in on the scheme as well, with no explained motivation.

14.     Diversified's civil conspiracy allegations, like its fraudulent conveyance allegations, are based upon an alleged conspiracy to engage in the fraudulent divestiture of the car wash business. (Cal. Complaint at ¶ 105.) The divestiture was of assets that belonged to the Car Wash Entities, not to Danny Hendon, so there was no tort as to Diversified (or Danny Hendon's Trustee) on which to base a civil conspiracy claim.

15.     Neither Arizona nor California recognize conspiracy as an independent tort. *E.g.*, *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 510 (1997) (Arizona does not recognize a civil action for conspiracy; it recognizes "an action for damages caused by acts committed pursuant to a conspiracy"); *Daniels v. Select Portfolio Servicing, Inc.*, 201 Cal. Rptr. 3d 390, 411 (App. 2016) ("Conspiracy is not an independent cause of action, but rather a doctrine imposing liability for a tort upon those involved in its commission.").

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

2010607377_1                                                                2010565916_1

16.     Rather, Diversified must prove tort liability and prove that Verde *agreed* to commit that tort. Under Arizona law, "liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, ¶ 99 (2002), *as corrected* (Apr. 9, 2002) (internal quotations omitted).  Similarly, in California, one must agree to a common plan or design to commit a tort to be liable for conspiracy. *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1287 (C.D. Cal. 2015); *see also Kidron v. Movie Acquisition Corp.*, 47 Cal. Rptr. 2d 752, 758 (App. 1995) (reasoning that *co-conspirators must have knowledge of the planned tort and intend to aid in its commission*).  "It is not enough that the [conspirators] knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it." *Arei II Cases*, 157 Cal. Rptr. 3d 368, 382 (App. 2013).  The plaintiff must prove the existence of an agreement by clear and convincing evidence. *Wells Fargo Bank*, 201 Ariz. at 499 ¶ 100.  The Court will hear from Ernie Garcia on Monday.  Diversified cannot prove any such knowledge or intent to commit any tort.

17.     Diversified's civil conspiracy claim is also barred by *in pari delicto* like its fraudulent conveyance and RICO claims.  In an antitrust suit, the Supreme Court reasoned that when a wrongdoer sues a co-conspirator, traditional equitable principles "suggest that parties generally *in pari delicto* should be left where they are found." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 635 (1981).  In another antitrust case, the Ninth Circuit concluded that a plaintiff is barred from recovering when the "conspiracy would not have been formed but for the plaintiff's participation." *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 279 (9th Cir. 1976).  Under this test, the plaintiff's degree of participation "must be equal to that of any defendant and a substantial factor in the formation of the conspiracy." *Id.*  For these reasons, in bankruptcy cases too, an alleged co-conspirator debtor cannot name another co-conspirator as a defendant in a civil conspiracy claim. *In re Gaudette*, 241 B.R. 491, 500 (Bankr. D.N.H. 1999).  "The parties to the fraudulent transaction, being *in pari delicto,* are left by

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

the law in the position in which they have placed themselves." *Id.*; *see also In re Am. Int'l Group, Inc., Consol. Derivative Litig.*, 976 A.2d 872, 883-84 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of La. v. Gen. Re Corp.*, 11 A.3d 228 (Del. 2010) (barring plaintiff from recovering against co-conspirator defendants where plaintiff's harm was caused by its own participation in illegal conduct).

6. Aiding and Abetting

18. Arizona does not recognize a cause of action for aiding and abetting a fraudulent transfer. *Warne Investments, Ltd. v. Higgins*, 219 Ariz. 186, 197 (App. 2008). And Diversified does not state a claim under California law because it would have to show that Verde met this test:

> (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 405 (App. 2005). Diversified has not and cannot allege that any of the parties involved in the note transfers or deed-in-lieu transaction with the Car Wash Entities owed duties to Diversified or that Verde knew about any tortious activity.

19. Furthermore, a California aiding and abetting claim "requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Howard v. Superior Court*, 3 Cal. Rptr. 2d 575 (1992); *see also Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003) (reasoning that a defendant must have actual knowledge of the primary violation before it can be liable for aiding and abetting). There was no such knowledge or decision on Verde's part.

7. Unjust Enrichment; Constructive Trust; Money Had and Received

20. Verde obtained no assets belonging to Diversified or even Danny Hendon. It was not enriched by them, let alone unjustly enriched. Verde only profited from buying and selling mortgage notes owed by the Car Wash Entities held by investors secured by those entities' assets.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Lewis Roca
ROTHGERBER CHRISTIE

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

8.    Accounting

21.    In addition to engaging in no misconduct, Verde was never entrusted with Diversified's (or Danny Hendon's) property, and had no relationship with them that would warrant an accounting. *Dooley v. O'Brien*, 226 Ariz. 149, 155 (App. 2010); *Teselle v. McLoughlin*, 92 Cal. Rptr. 3d 696, 715 (2009).

9.    California Unfair Business Practices

22.    Diversified has no claim under this statute because it is a resident of Arizona, like Verde, and Verde's mortgage note purchases and sale and even loans to Heather Hendon occurred in Arizona. The actions were allegedly wrongful to keep the assets out of the reach of a bankruptcy estate in Arizona and frustrate collection efforts by Diversified on its Arizona judgment. *Collazao v. Wen by Chaz Dean, Inc.*, 2015 WL 4398559, *3 (C.D. Cal. July 17, 2015).

**C.    Damages**

23.    Diversified has claimed that Verde and other defendants are liable for multi-millions of dollars of damages, because Diversified loaned $7.7 million in 2007 to an entity in which Danny Hendon was involved, guaranteed by Danny Hendon, and Danny Hendon misused the proceeds. No one at Verde even knew Danny Hendon until 2014, but Diversified claims entitlement to damages based upon an alleged vast conspiracy. Diversified is grossly mistaken.

24.    A person "cannot be liable for torts which occurred before he joined the conspiracy." *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1026 (D. Ariz. 2001) (applying California law); *see also Kidron v. Movie Acquisition Corp.*, 47 Cal. Rptr. 2d 752, 767 (1995) (reasoning that a defendant cannot be deemed a conspirator in an already completed tort). As noted above, neither Arizona nor California recognize conspiracy as an independent tort, and because Danny's tortious conduct with respect to the loan proceeds predates Verde's alleged involvement in the conspiracy, Verde cannot be liable for those torts. "[L]iability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *E.g., Wells*

*Fargo Bank*, 201 Ariz. at 498 ¶ 99. A person cannot agree to accomplish an act that has already been committed.

25. Further, Arizona's statute of limitations precludes liability for Danny Hendon's misuse of the loan proceeds. The statute of limitations begins to run at the time a specific, overt act is committed in furtherance of the conspiracy. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131 (1966). "[T]he cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff, and [s]eparate conspiracies may not be characterized as a single grand conspiracy for procedural advantage." *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986) (internal quotations and citations omitted).

26. Thus, even if Diversified could state a claim for civil conspiracy, and somehow link Verde to any findings of misconduct by Danny Hendon, Heather Hendon, Ellis Rubenstein or anyone else, Verde's liability would be limited to the money allegedly diverted from Diversified and other creditors via Verde's 2014 loans to Heather Hendon. At most, that would be the total $1.6 million loan amount.

27. However, Verde is confident the evidence will show that Verde loaned $1 million to Heather Hendon to satisfy a perceived moral oral obligation to her alone for $1 million. Verde acknowledges that $100,000 of the amount loaned to Heather Hendon was for her use in satisfying Danny Hendon's attorneys' fees debts. And the remaining $500,000 is an amount initially discussed with Danny Hendon as an amount he could earn from Verde in consulting fees – but did not. When Verde forgave repayment of the $600,000 note, nothing was said about whether the money was for Heather Hendon or Danny Hendon, and is thus unclear (*See* the attached shared mediation statement). The amount at issue is thus $100,000 or at most $600,000.

28. Diversified certainly has not and cannot state a claim for punitive damages

**D.  Procedural Challenges**

29.     As set forth in Verde's objection to the sale motion [DE 193], standing is determined as of the initial complaint filing date.  If Diversified acquires the Trustee's rights in the DFG Adversary Claims, it will not cure Diversified's lack of standing.

30.     Diversified's suit in California is subject to dismissal because California lacks personal jurisdiction over Verde or other defendants.  Verde's activities in California are not substantial, continuous, and systematic, nor do its less substantial contacts with California give rise to Diversified's alleged causes of action.  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  The same is true of PacWest, Heather Hendon, and other defendants.

31.     This Court does not have authority to enter a final judgment against Verde because Plaintiff's fraudulent transfer claims are constitutional non-core claims under *Stern v. Marshall*, 564 U.S. 462 (2011), and Plaintiff's RICO claim is statutorily non-core under 28 U.S.C. § 157(b)(2).  *See In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 565 (9th Cir. 2012) (bankruptcy court may not enter final judgment on a fraudulent transfer claim under § 548); *Barnett v. Stern*, 909 F.2d 973 (7th Cir. 1990) (RICO claim is noncore, related proceeding).  If the Court denies initial motions to dismiss, Verde reserves its right to district court review of any judgment entered against it by this Court.  *See Bellingham*, 702 F.3d at 566 ("[B]ankruptcy courts have statutory authority to hear and enter proposed findings of fact and conclusions of law in a fraudulent conveyance proceeding asserted by a bankruptcy trustee against a non-creditor, subject to de novo review by a federal district court.").

**III.     Collectability**

32.     Mr. Garcia will testify that Verde is "collectible."  Verde believes the same is true of PacWest.  However, Verde does not believe that Diversified will ever be able to obtain a judgment against Verde or PacWest.  To the extent Diversified is able to obtain a judgment against any other defendants, it is likely to have a great deal of difficulty collecting from them.

## IV.  Complexity, Expense, Inconvenience and Delay

33.  As noted above, Diversified faces multiple procedural hurdles to any recovery against Verde and other defendants.  The California lawsuit is already the subject of a removal notice. Diversified may seek to remand it, and the defendants will litigate that effort, as well as lack of jurisdiction there.  The defendants will assert Diversified's lack of standing even if Diversified were to buy the Trustee's claims and standing, because lack of standing when a complaint is filed cannot be cured in such a manner.  Even if all of the causes of action wind up in this Court for resolution, they cannot be finally resolved here, because some are *Stern* claims.

34.  Some of the defendants have already filed motions to dismiss in California and in this Court.  Others have such motions in process.  To the extent those motions are denied and some of the causes of action remain, there will be summary judgment motions after discovery, and discovery itself will be lengthy and expensive.

35.  Verde has already produced 51,901 documents to Diversified in response to Diversified's subpoenas.  Diversified will need to review them, and the documents it has subpoenaed from other defendants and from third parties including the three sellers of mortgage notes to Verde.  It will need to seek documents from other defendants, and there will be many depositions Diversified will take.  Verde and other defendants will be seeking discovery from Diversified as well.

36.  The sale approval hearing is akin to a mini-trial.  Diversified will need to prepare for a full trial, which will be even more burdensome and expensive if it is a jury trial (only to be followed by briefing and argument to the District Court on the *Stern* claims).  It will need to find expert witnesses to testify that the value of the Car Wash Entities exceeded the amount of those entities' indebtedness, which will be difficult, and it will need to try and undermine the credibility of Verde's experts and the bankruptcy factual record.  It will need to find experts to testify that the mortgage notes Verde bought and sold were worth considerably more than established through arms' length negotiations, and defeat the credibility of Verde's experts and common sense and case law to the contrary.

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

2010607377_1

2010565916_1

LewisRoca ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

37. Diversified's litigation will be hard-fought and expensive against Verde and PacWest, entities with deep pockets and the wherewithal to outlast Diversified's efforts. Indeed, because Diversified's claims are so deeply flawed, and Diversified is on public notice of their frivolous nature, the defendants are likely to obtain an award of attorneys' fees and costs against Diversified in the end. *See Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996) (while RICO's text allows a prevailing plaintiff to recover attorneys' fees, a defendant can as well when the suit is frivolous) (citing *Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988)); *Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 559 (9th Cir. 1986)); *see also* A.R.S. § 12-349(A), (F) (courts shall assess reasonable attorneys' fees if person "[b]rings or defends a claim without substantial justification," which means that the claim or defense is "groundless and is not made in good faith").

**V.    Paramount Interest of Creditors**

38. The creditors whose interests are to be considered are all of the creditors in the Danny Hendon bankruptcy case, beneficiaries of the Liquidating Trust, not just Diversified.

39. The paramount interest of creditors is certainty of payment. Verde's offer of $200,000 cash today is significantly better for the creditors than the dicey potential to achieve something more, someday in the future, in the unlikely event that Diversified might prevail in achieving a substantial recovery in its case that is flawed to the point of being frivolous. The sale to Diversified, as proposed, is also improper in transferring all control over the litigation to Diversified, and in exchange for a small contingency, as set forth in Verde's objection to the Sale Motion. [DE 193]. A cash sale to Verde would eliminate those legal obstacles.

DATED this 21st day of July, 2016.

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

BY:    */S/ SUSAN M. FREEMAN (004199)*
          Susan M. Freeman
          Robert McKirgan
          Justin J. Henderson
          *Attorneys for Defendants Ernie Garcia,*
          *Verde Investments, Inc. and Verde Auto Services, Inc.*

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

1  **COPIES** served on July 21st, 2016, via
   ECF notice on all parties that have

2  appeared in this case.

3  **COPIES** mailed via U.S. Mail and/or emailed
   this 21st day of July, 2016, to:

4

5  Michael A. Jones
   Philip J. Giles

6  **ALLEN BARNES & JONES, PLC**
   1850 N. Central Avenue, Suite 1150

   Phoenix, AZ  85004

7  Email:  mjones@allenbarneslaw.com
              pgiles@allenbarneslaw.com

8  *Attorneys for Thomas H. Allen, Individual*
   *Plan Agent, Post Confirmation Liquidating*

9  *Trustee, and Disbursing Agent for the*
   *Bankruptcy Estate of Daniel L. Hendon*

10

11 Matthew C. Browndorf
   Grace M. Kim

   Marc Y. Lazo

12 Kent E. Salveson
   Nilofar Karbassi

13 WILSON HARVEY BROWNDORF, LLP
   1900 Main Street, Suite 600

14 Irvine, CA   92614
   Email:  mcbrowndorf@whbllp.com

15           gkim@whbllp.com
             mlazo@whbllp.com

16           ksalveson@whbllp.com
             nkarbassi@whbllp.com

17 *Attorneys for Diversified Funding Group, LLP*

18 Jerry L. Cochran
   COCHRAN LAW FIRM, PC

19 2929 E. Camelback Road, Suite 118
   Phoenix, AZ  85016

20 Email:  jcochran@cochranlawfirmpc.com
   *Attorneys for Kelly Carroll-Hendon*

21

22 Donald L. Gaffney
   SNELL & WILMER L.L.P.

   One Arizona Center

23 Phoenix, AZ  85004-2202
   Email:  dgaffney@swlaw.com

24 *Attorneys for TR&C DR Properties, LLC*

25

26

27

Case 2:11-bk-21164-SHG   Doc 208   Filed 07/21/16   Entered 07/21/16 11:56:37   Desc
2010607377_1                                                                2010565916_1

1   Daniel E. Garrison
    ANDANTE LAW GROUP, PLLC
2   Scottsdale Financial Center 1
    4110 N. Scottsdale Road, Suite 330
3   Scottsdale, AZ  85251
    Email:  dan@andantelaw.com
4   *Attorneys for the Official Committee of Unsecured Creditors*

5   Alan A. Meda
    BURCH & CRACCHIOLO PA
6   702 E. Osborn Road, Suite 200
    Phoenix, AZ    85014
7   Email:  ameda@bcattorneys.com
    *Attorneys for Daniel Lewis Hendon*

8

9   James R. Harrison
    O'STEEN & HARRISON, PLC
    300 W. Clarendon Avenue, Suite 400
10  Phoenix, AZ  85013
    Email:  jharrison@vanosteen.com
11  *Attorneys for First Fidelity Bank, N.A.*

12  G. Patrick Jennings
    U.S. DOJ, Trial Attorney Tax Division
13  P.O. Box 683
    Washington, DC    20044-0683
14  Email:  guy.p.jennings@usdoj.gov
    *Attorneys for United States*

15

16  Carolyn J. Johnsen
    Robert Shull
    DICKINSON WRIGHT PLLC
17  1850 N. Central Avenue, Suite 1400
    Phoenix, AZ    85004
18  Email:  cjjohnsen@dickinsonwright.com
    rshull@dickinsonwright.com
19  *Attorneys for Victoria A. Hendon*

20  Jamin S. Neil
    PITE DUNCAN LLP
21  4375 Jutland Drive, Suite 200
    P.O. Box 17933
22  San Diego, CA   92177
    Email:  jneil@piteduncan.com
23  *Attorneys for CitiMortgage, Inc.*

24  William Novotny
    DICKINSON WRIGHT PLLC
25  1850 N. Central Avenue, Suite1400
    Phoenix, AZ  85004
26  Email:  wnovotny@dickinsonwright.com
    *Attorneys for Vestar Arizona XLVIII, L.L.C.*

27

Lewis Roca
ROTHGERBER CHRISTIE

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

Randy Nussbaum
NUSSBAUM GILLIS & DINNER, P.C.
14850 N. Scottsdale Road, Suite 450
Scottsdale, AZ    85254
Email:  rnussbaum@ngdlaw.com
*Attorneys for Henry H. Lee*

Josephine E. Salmon
PITE DUNCAN, LLP
4375 Jutland Drive
P.O. Box 17933
San Diego, CA   92177
Email:  ecfazb@piteduncan.com
*Attorneys for JP Morgan Chase Bank, National*
*Association, as Successor-in-Interest to Washington*
*Mutual Bank, f/k/a Washington Mutual Bank, FA*

Sheila R. Schwager
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
sschwager@hawleytroxell.com
*Attorneys for PacWest Energy, Jackson Food Stores*
*Equilon Enterprises*

Helen R. Holden
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Helen.Holden@SacksTierney.com
*Attorneys for E Management Consulting, Prudential Metal*
*and Steel Supply, LLC and Ellis Rubenstein*

Jay Swart
2525 E. Elm
Phoenix, AZ 85016
Creditor appearing pro se
jayswart@cox.net

Gil Olguin
5600 Grand Guiness Court
Las Vegas, NV 89130-1366
Creditor appearing pro se
gmolguin@gmail.com

By _/s/ Marie H. Mancino_____
    LEWIS ROCA ROTHGERBER CHRISTIE, LLP