MARC LAZO (Ca. Bar. No. 215998)
PHILIP EIKER (Az Bar. No. 025913)
**WILSON KEADJIAN BROWNDORF LLP**
62 Rail X Ranch Estates Place
Patagonia, Arizona 85624
Phone No.: (888) 690-5557
Fax No.: (949) 234-6254
mlazo@wkbllp.com

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| Daniel Lewis Hendon, | Case No. 2:11-bk-21164-SHG |
| Debtor. | Adversary No. 2:16-ap-00127-SHG |
| DIVERSIFIED FUNDING GROUP, LLC; REYNALDO GUTIERREZ; THE FARADJOLLAH FRED DJAHANDIDEH TRUST; FRED DJAHANDIDEH; HCM RETIREMENT TRUST; DREW SHERLINE; HCM RETIREMENT TRUST; RIGHTPATH INVESTORS, LLC; SIROTKA HOLDINGS, LLC; iDEA SERVICES, LLC; VAN BUREN DEVELOPMENT, LLC; SOUTHWEST DEVELOPMENT PARTNERS, LLC; FORTUNA ASSET MANAGEMENT, LLC, Plaintiffs v. DANIEL HENDON; NELL HENDON; HEATHER HENDON; CHRIS ALVAREZ; VICTORIA HENDON; KELLY CARROLL; ALAN MEDA; ERNIE GARCIA; BURCH & CRACCHIOLO; VERDE AUTO SERVICES, LLC; VERDE INVESTMENTS, INC.; ELLIS RUBENSTEIN; PRUDENTIAL METAL AND STEEL SUPPLY; E MANAGEMENT CONSULTING, LLC; ERNIE VASQUEZ; GIL OLGUIN; JAY SWART; MARIA BARKER; PACWEST ENERGY, LLC; JACKSONS FOOD STORES INC.; EQUILON ENTERPRISES, LLC; AND DOES 1 through 100, inclusive Defendants. | *Filed in Bankruptcy Case Docket and Adversary Proceeding Docket* <br><br> **JOINT MOTION TO APPROVE SETTLEMENT WITH TRUSTEE, VERDE PARTIES, PACWEST PARTIES, HEATHER AND VICTORIA HENDON, PURSUANT TO FED. R. BANKR. P. § 9019** |

**1**
MOTION FOR PARTIAL SETTLEMENT OF CONTROVERSY

**JOINT MOTION TO APPROVE SETTLEMENT PURSUANT TO FED. R. BANKR. P. § 9019**

Diversified Funding Group, LLC ("**DFG**"), Reynaldo Gutierrez, The Faradjollah Fred Djahnadideh Trust, Fred Djahandideh as Trustee of the Faradjollah Fred Djahandideh Trust; HCM Retirement Trust, Drew Sherline as Trustee of HCM Retirement Trust, Rightpath Investors LLC, Sirotka Holdings LLC, iDEA Services, LLC, Van Buren Development LLC, Southwest Development Partners, LLC, Fortuna Asset Management, LLC (collectively referred to herein as "**Plaintiffs**") hereby file this motion (the "**Motion**") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, for approval of a settlement and compromise (the "**Settlement Agreement**," attached hereto as Exhibit "1") between Ernie Garcia, Steven Johnson, Verde Auto Services, LLC, and Verde Investments, Inc. (collectively "**Verde Parties**"), PacWest Energy LLC, Equilon Enterprises, LLC and Jacksons Food Stores Inc., (collectively "**PacWest Parties**"), Heather Hendon, Victoria Hendon, (collectively the "**Hendon Parties**" and collectively with the Verde Parties, and PacWest Parties referred to herein as the "**Settling Defendants**") and Thomas H. Allen, Plan Agent and Trustee of the Liquidating Trust Agreement and Declaration of Trust dated November 12, 2016 ("**Trustee**").

## I. THE LITIGATION BEING SETTLED

The proposed settlement, if approved, will resolve the claims against the Settling Defendants in the above-captioned adversary action ("**Adversary Action**") pending in the United States Bankruptcy Court for the District of Arizona ("**Bankruptcy Court**") and the action filed in the Superior Court of California, County of Orange, Case No. 30-2016-00839008-CU-FR-CJC styled *Diversified Funding Group v. Hendon et al.*, which was removed to the United States District Court for the Central District of California, Case No. 8:146-cv-00823 and amended on August 2, 2016 ("**California Action**"). The settlement will also resolve through a release by the Trustee all claims of the Trustee on behalf of the Trust and the Debtor' bankruptcy estate against the Settling Defendants. The settlement will also resolve the adversary complaint filed by the Trustee against Settling Defendant Heather Hendon in the Bankruptcy Court, Adv. Case No. 2-15-ap-00739 ("**Trustee's Hendon Adversary**"). The Adversary Action, California Action, and Trustee's Hendon Adversary will be collectively referred to herein as the "**Actions**". The Trustee, however, is not settling or selling its existing avoidance action against Kelly Carroll Hendon for $192,884.53. See Adv. Case No. 2:15-ap-00740.

The proposed settlement will only resolve claims against the Settling Defendants and no other defendants named in the Actions. If the Court approves the settlement, the Settling Parties will ask the Court to enter a final approval order and orders dismissing the Settling Defendants with prejudice. The settlement approval order would also eliminate any contribution or other cross-claims against the Settling Defendants by the other defendants remaining in the case, and would bar any discovery against the Verde Parties and Victoria Hendon by any of the parties remaining in the case, who would still be able to use through judicial notice the sworn testimony of Ernie Garcia and Steven Johnson at the Bankruptcy Court hearing on July 25, 2016.

## II. BACKGROUND OF THE SETTLEMENT

On March 4, 2016, amended on August 2, 2016, DFG instituted the above referenced Adversary Action and California Action against the Settling Defendants and other named defendants. In its Adversary Action, DFG also named judgment debtor Daniel Hendon, the debtor in the pending Bankruptcy Case in this Court also referenced above as Case No. 2:11-bk-21164-SHG.

On July 1, 2016, the Trustee filed a motion in the Bankruptcy Case [Dkt. #180] seeking Bankruptcy Court approval of the Purchase and Sale Agreement dated July 1, 2016 between Thomas H. Allen, as Trustee of the Liquidating Trust Agreement and Declaration of Trust dated November 12, 2012 and Plaintiffs (the **"PSA"**) to sell to Plaintiffs any and all litigation claims, rights, standing and interest that the Trustee and the Trust hold against any of the defendants in the Actions and an additional Trustee adversary proceeding against one of the defendants who is not a Settling Defendant, and any future lawsuits, claims, or other proceedings initiated in law or equity by Plaintiffs for which the Trustee and the Trust would hold litigation claims, rights, standing or any interest (Bankruptcy Case Dkt. 180). Some of the Settling Defendants objected to the proposed sale, and Settling Defendant Verde Investments, Inc. offered a cash overbid. After briefing and an evidentiary hearing, the Bankruptcy Court took under advisement approval of the sale to Plaintiffs or to Verde Investments, Inc. ("**Sale Proceedings**"). Upon the Effective Date of the settlement, Verde Investments, Inc. will withdraw its bid in the Sale Proceedings.

The Settlement Agreement and Loan Documents attached to this Motion as exhibits include detailed terms and conditions that are summarized below. To the extent of any discrepancy, the provisions in the exhibits control.

### III. SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT AND COMPROMISE

#### A. Settlement Consideration as to the Verde Parties

The Verde Parties have presented their evidence to the Bankruptcy Court and vehemently contend that they have no liability to the Plaintiffs or to the Trustee. In order to terminate the Actions against them, against the purchaser of mortgage notes from Verde Investments and the borrower of funds from Verde Investments, and to eliminate the ongoing burden and expense of litigation, however, they have agreed to this settlement. Verde Investments will pay in settlement $600,000, which will be accompanied by a Loan that is fully secured and will be repaid in full in three years with interest that may exceed $600,000 as set forth below. The Bankruptcy Court order approving the settlement must provide for the elimination of contribution or similar claims by other defendants and preclude any discovery of the Verde Parties. The Verde Parties will be done with litigation of the Actions, which will be dismissed against them with prejudice (Exhibits 1 I-J) and accompanied by full releases.

The Plaintiffs have agreed among themselves how to allocate and use the share of the $600,000 not paid to the Trustee, and have received commitments by Distressed Capital Management ("**DCM**"), the entity receiving the Loan component of the settlement (as fully detailed below), how it will invest the Loan proceeds (without any involvement or endorsement of any kind from the Settling Defendants) and that the Plaintiffs will recover an investment return of 6% (subordinate to and payable only after the Loan) and the potential to recover Loan Investment Proceeds (as defined below) that DCM projects will exceed $1.9 million for the benefit of the Plaintiffs.

More specifically, the settlement consideration from the Verde Parties is as follows:

**(1) Cash Payment from Verde Investments**

On the settlement Effective Date (after the Bankruptcy Court order approving the settlement is final and not appealable), Verde Investments, Inc., will make a payment of $600,000 in cash (the

**4**
MOTION FOR PARTIAL SETTLEMENT OF CONTROVERSY

"Cash Payment"), $540,000 of which will be disbursed to DFG and $60,000 of which will be disbursed to the Trustee.

### (2) Loan Agreement With Verde Investments

Verde Investments, Inc. and DCM, an asset management company stating that it specializes in performing and non-performing residential mortgages, have executed, contingent upon the Effective Date, a Loan Agreement (Exhibit 1 Ex. C, the "**Loan Agreement**") and related documents (collectively, the "**Loan Documents**") for a secured and guaranteed Loan (the "**Loan**") in the amount of $2,400,000 (the "**Loan Proceeds**") less $20,000 which shall be deducted from the Loan Amount for the fees and expenses due and payable by Borrower Parties on or prior to Closing for Lender's counsel and the title insurance premium for Title Insurance Policy. Under the terms of the Loan Agreement, DCM delivers to Verde Investments, Inc. the executed secured promissory note (Exhibit 1 Ex. D, the "**Note**") in an equal amount to the Loan Proceeds, with interest thereon at a rate of twelve percent (12%) per annum with interest-only payments to be due and payable quarterly in arrears during the Note term of thirty six (36) months (the "**Term**") and with a balloon payment of the principal due at the end of the Term. If the entire Loan is outstanding for three years, and the quarterly interest payments are paid timely, then the total interest payable to Verde Investments will be $864,000. The Loan may be prepaid with proceeds of collateral securing the Loan, and if prepaid, the amount of interest received will be reduced.

Contingent upon the Effective Date like the other Loan Documents, the Note is guaranteed by DCM affiliates: Plutos Sama, LLC, Matthew C. Browndorf, DCM-P1, LLC and DCM-P3, LLC (Exhibit 1 Ex. E, the Repayment Guaranty). The Note and Guaranty are collateralized by a deed of trust on California residential real property and improvements owned by DCM-P3, LLC subordinate only to existing mortgage loans (Exhibit 1 Ex. F, Deed of Trust), and a pledge of certain bonds held by DCM-P1, LLC (the "**Bonds**") as described more fully in the pledge agreement, (Exhibit 1 Ex. G, Pledge Agreement). Notwithstanding the interest-only nature of the Loan, any and all distributions on the Bonds are assigned to Verde Investments and will be paid to Verde Investments until all amounts due under the Loan are paid in full, as set forth in the Loan Agreement. The original executed Loan

Documents are being held by DFG's counsel pending Bankruptcy Court approval and the occurrence of the Effective Date.

### B. DFG's Use of Verde Parties' Consideration

DFG represents that it will use the consideration from the Verde Parties to benefit the Plaintiffs and Trustee as follows. However, the Settling Defendants make no representations, warranties or endorsements of any calculations, projections or guarantees of any amount that DFG or DCM or their affiliates may return to any Plaintiffs or the Trustee – all of which are subordinate to and payable only after payment in full of all amounts due to Verde Investments under the Loan Agreement. Also, all claims of the Plaintiffs or Trustee against the Settling Defendants relating to such projected and/or guaranteed returns are forever and irrevocably waived, and the Settling Defendants are indemnified by the Plaintiffs, DCM and the Guarantors with respect to any such claims.

#### (1) Use of the Cash Payment

Ten percent of the Cash Payment, i.e. $60,000, will be distributed to the Trustee on the Effective Date. The remainder of the Cash Payment, i.e. $540,000, will be distributed to DFG and will thereafter be distributed by DFG to all remaining Plaintiffs in the case. Plaintiffs have agreed among themselves how to allocate and use the share of the Cash Payment.

#### (2) 6% Loan Proceeds Return from DCM to DFG

DFG will have no obligations with respect to payment of the Loan, but DCM commits to pay to DFG a six percent (6%) compounded return payable at the end of the Term, after full repayment to Verde Investments of the Loan and all interest and other amounts due thereon, an amount that DCM projects to be $458,438.40 (the "**Loan Proceeds Return**"). As with the Cash Payment, the Loan Proceeds Return will benefit all Plaintiffs. DFG and the other named Plaintiffs have agreed among themselves how to allocate and use the Loan Proceeds Return. Any and all rights and interests of DFG and in the Loan Proceeds are subordinate to the rights of Verde Investments.

DFG thus anticipates receiving and retaining $998,438.40, consisting of $540,000 of the Cash Payment and $458,438.40 of the Loan Proceeds Return. **Loan Investment Proceeds**

In addition to the Cash Payment and the Loan Proceeds Return, DFG has the potential to receive additional returns to the extent DCM uses the Loan Proceeds or a portion thereof (the "**Loan**

**6**
MOTION FOR PARTIAL SETTLEMENT OF CONTROVERSY

**Investment**"), in combination with additional capital sourced by DCM (each capital source referred to as a "**Co-Investor**") to acquire certain pools of nonperforming loans (each, a "**NPL Pool**") to which, DCM, as an asset manager, will manage the liquidation or re-performance. DCM's current intention is to use such Loan Investment for a NPL Pool in Poland (the "**Poland Deal**"). An explanation of the Poland Deal will be submitted to the Court under seal, with copies provided to the Plaintiffs, Settling Defendants, and the Trustee.

The Verde Parties are not directing or requiring use of any Loan Proceeds for the Poland Deal or any other investment that DCM may elect to make. The Verde Parties make no representations, warranties, or projections of any kind with respect to use of the Loan Proceeds. DCM as the Loan Borrower, DFG and the Loan Guarantors indemnify and defend the Verde Parties from all claims and damages resulting from DCM's investment in the Poland Deal or any other use of Loan Proceeds. No one should rely on Verde Investments funding the Loan as an endorsement of the Poland Deal or any other investment by DCM. Plaintiffs indemnify and hold Settling Defendants harmless against any liability resulting from DCM's or DFG's failure to satisfy arrangements with Plaintiffs, or any action or omission by DCM or DFG with respect to the Loan or the Cash Payment.

With the Poland Deal, DCM projects that it could receive a return on the Loan Investment of $917,926.91 as DFG's *pro rata* share with other such Co-Investors in the Poland Deal. While DFG will not be an Investor in the Poland Deal, it nonetheless can derive an economic benefit therefrom under terms set forth in the under-seal filing. As such, DFG anticipates that it may receive an additional projected investment return of 11.4%, totaling an additional projected $917,926.91. A total compounded rate of return on the Loan Proceeds of 17.4% (inclusive of DFG's Loan Proceeds Return of 6%, detailed above, and for purposes of this section, assumed to have been invested into the Poland Deal), could provide to DFG a projected return of $1,376,365.31 on the Poland Deal. The Loan Investment Proceeds benefit all Plaintiffs, and Plaintiffs have agreed among themselves how to allocate and use the Loan Investment Proceeds.

### C. Trustee Consideration

As consideration to the Trustee, the Settling Parties have agreed that Verde Investments Inc. will withdraw its bid in the Sale Proceedings on the Effective Date, and the Trustee will, on the

Effective Date, sell to Plaintiffs, any and all litigation claims, rights, standing and interest that the Trustee and the Trust hold against any of the defendants other than Settling Defendants, pursuant to PSA, which shall be amended and modified, pursuant to the Settlement Agreement, to amend the term "Sale Amount" to mean $200,000. The parties have further agreed to amend the PSA to exclude the sale of the Trustee's avoidance action against Kelly Carroll Hendon for $192,884.53 ("**Trustee's Retained Adversary**"). See Adv. Case No. 2:15-ap-00740. The Sale Amount shall be distributed to the Trustee pursuant to the terms of the Settlement Agreement, which includes a $60,000 Cash Payment and $140,000 Trustee Loan Proceeds. Thus, while the initial offer from Verde Investments Inc. on or about July 15, 2016, would have yielded the Trustee a sum of $200,000 in exchange for the Trustee's sale of its claims and rights against all of the named Defendants, under this Settlement Agreement, the Trustee also yields $200,000 as consideration and need not expend any Trust resources further litigating these issues.

### D. Cooperation Agreement of Heather Hendon

Within three business days after entry of a Bankruptcy Court order approving the Settlement Agreement, Heather Hendon has agreed to execute the Cooperation Agreement with Plaintiff attached as Exhibit 1 Ex. H, and shall comply with the obligations therein. The Trustee's Hendon Adversary will be dismissed with prejudice along with the Actions against all of the Settling Defendants, with Hendon filing the dismissal with prejudice attached as Exhibit 1-K.

### E. Court Approval and Binding Effect

The Settlement Agreement is subject to and contingent upon approval by the Bankruptcy Court. The approval order in the form attached as Exhibit 2 shall include:

(a) an express finding of fact of the Parties' good faith,

(b) the binding effect of the Approval Order on the Parties and all of their successors and assigns including any Chapter 7 trustee appointed in the Bankruptcy Case,

(c) the Settling Defendants shall not be required to participate any further in the Actions, and the Verde Parties (as Settlement Agreement funders that already provided testimony under oath) and Victoria Hendon (as a party whose only alleged wrongdoing was receiving unidentified property from Daniel Hendon, a claim being settled) not being obliged to participate in any discovery by any party,

and discovery against Heather Hendon by the Plaintiffs limited to her obligations set forth in the Cooperation Agreement,

(d) express findings that the settlement is entered into in good faith and that any indemnification, contribution or other claims or cross-claims that could be brought by any non-settling defendant against the Settling Defendants are extinguished and barred under applicable law, and that the Bankruptcy Court has authority to so order,

(e) the Verde Parties have no responsibility or liability for use of the Cash Payment or Loan Proceeds, make no representation or warranty of any calculations or projections of returns from any use of such settlement consideration, that the all amounts due under the Loan shall be paid in full before any Loan Investment Proceeds or Loan Proceeds Return is received by any person or entity, and that the Plaintiffs and all parties to the Loan Documents waive any claims against the Verde Parties relating to the Loan including disposition of the Loan proceeds, and

(f) the amendments to the PSA described herein are approved, and the Bankruptcy Court approves the sale set forth in the PSA, as amended, effective on the Effective Date.

The Effective Date of the Settlement Agreement is the first business day that is at least fifteen days after an order approving the Settlement Agreement becomes a Final Order. A "Final Order" is defined in the Settlement Agreement as an order as to which the time for appeal has expired, with no appeal having been filed, or any such appeal having been disposed of by order of the highest court to which the appeal is taken, provided however, that all Parties may jointly waive the requirement of final disposition of any appeal, and may fund and effectuate the settlement despite any appeal solely at their election, and further provided that in the event of any objection to the Bankruptcy Court finding that all contribution, indemnification or like claims against the Settling Defendants are extinguished or waived, such finding must be entered in the California Action before the order becomes a Final Order.

**F.     Mutual Releases**

Upon the Effective Date, the Settling Parties grant mutual general releases of claims against each other and any predecessors-in-interest, successors-in-interest, spouses, heirs, assigns, affiliates, parents, subsidiaries, officers, directors, shareholders, partners, members, agents, contractors, employees, attorneys, representatives, administrators, heirs, executors, successors and assigns of any of

the Parties, including, but not limited to, Verde Investments Inc., an Arizona corporation, Verde Auto Services, LLC, an Arizona limited liability company, Ernie Garcia, Steven Johnson, Heather Hendon, PacWest Energy, LLC, a Delaware limited liability company, Jacksons Food Stores, Inc., a Nevada corporation, Equilon Enterprises, LLC, a Delaware limited liability corporation and Victoria Hendon. The release provision is set forth in more detail in the Settlement Agreement. These releases shall not impair, limit, or release: (i) any of the obligations between Plaintiffs, DCM, and the Trustee as stated in the Settlement Agreement, in the Trustee PSA; or (ii) any of the claims pending in the Trustee's Retained Adversary.

## IV. THE COURT SHOULD APPROVE THE SETTLEMENT

Bankruptcy courts have recognized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Culmtech, Ltd.,* 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and … much of litigation in bankruptcy estates results in settlements"). Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing. Fed. R. Bankr. P. §9019(a), and section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate." 11 U.S.C. §105(a). The law favors settlement, particularly in complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976). A bankruptcy court must also independently evaluate the transaction as a settlement under the prevailing "fair and equitable" standard. *In re Lahijani*, 325 B.R. 282, 290 (B.A.P. 9th Cir. 2005). The fair and equitable settlement standard requires the court to consider: the probability of success in the litigation; collectability; complexity, expense, inconvenience, and delay attendant to continued litigation; and the interests of creditors. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, (1968); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir.1988).

"[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.,* 336 B.R. 87, 92 (Bankr. D. Del. 2005); *see also In re Louise's, Inc.,* 211 B.R. 789, 801 (D. Del. 1997). When exercising such discretion, the bankruptcy

**10**

MOTION FOR PARTIAL SETTLEMENT OF CONTROVERSY

court must determine whether the compromise is "fair, reasonable, and in the best interests [sic] of the estate." *Key3Media Group*, 336 B.R. at 92; *see also Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.),* 283 F.3d 159, 165 (3d Cir. 2002). The Bankruptcy Court is not required to determine that the proposed settlement is the best possible compromise. *Key3Media Group,* 336 B.R. at 92-93 (citing *In re Coram Healthcare Corp*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co).* 699 F.2d 599, 608 (2d Cir. 1983).

In this respect, it is unnecessary for the Court to consider the information necessary to resolve the factual dispute, nor is it necessary for the Bankruptcy Court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92. Similarly, the Court is not required to conduct a "mini-trial" of the underlying case, but instead must only decide whether the settlement falls "below the lowest point in the range of reasonableness." *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1955); *see also In re Jasmine, Ltd.,* 258 B.R. 119, 123 (D.N.J. 2000).

### A. <u>The Settlement Is In The Best Interest Of The Creditors And the Estate</u>

The Settlement is in the best interest of the Debtor's creditors and the bankruptcy estate and Trust. "When determining whether a compromise is in the best interest of the estate, the Court must 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *Key3Media Group*, 336 B.R. at 03; *see also In re Nationwide Sports Distributors, Inc.,* 227 B.R. 445, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the Trustee or debtor in possession act in [the] best interests of the estate"). To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *Marvel*, 222 B.R. at 249; *see also Key2Media Group*, 336 B.R. at 92 (The bankruptcy court must be "apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate."). The Settlement represents a fair, reasonable, and responsible compromise and settlement of disputed issues and claims among the Plaintiffs, Trustee, and the Settling Defendants, and is the product of the exercise of reasonable business judgment by the parties. *In re Fridman,* 2016 WL 3961303, at *8 (B.A.P. 9th Cir.

**11**
MOTION FOR PARTIAL SETTLEMENT OF CONTROVERSY

1 July 15, 2016) (the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis); *see also* I*n re HyLoft, Inc*., 451 B.R. 104, 110 (Bankr. D. Nev. 2011) (Courts will defer to a trustee's judgment provided the trustee demonstrates the compromise is reasonable).

The above referenced factors weigh heavily in favor of approving the Settlement. First, as fully detailed above, the Estate (through the Trust if the Bankruptcy Case is not converted) stands to benefit by receiving an immediate recovery of $200,000, while incurring no additional resources to attempt to litigate the issues in this complex matter.

The parties engaged in intense, good faith settlement discussions over the course of approximately 3 months and have agreed that this Settlement Agreement and the terms therein are fair and equitable and in the best interest of the Trust, the Debtor's bankruptcy estate, the Plaintiffs and the Settling Defendant and should therefore be approved.

The Trustee, in the exercise of his judgment with respect to maximizing the Daniel Hendon bankruptcy estate and Trust, and the Trustee's evaluation of information concerning the Actions and the Daniel Hendon bankruptcy case, has concluded the Settlement Agreement, including all of its payment and release provisions, is (a) in the best interest of the bankruptcy estate and the Trust, (b) should be approved by the Bankruptcy Court, and (c) should bind any subsequent Chapter 7 trustee appointed in the Bankruptcy Case.

**B.** **The Complexity, Expense, Inconvenience and Delay of The Litigation Warrants Approval**

The results of a trial are uncertain and litigation is complex. Not only are there 19 defendants in the case, but in addition to the above referenced Adversary Action in the Bankruptcy Court, there is also the California Action and the Trustee's Hendon Adversary. In addition to these Actions, there is a complex and complicated issue of whether the Trustee or DFG as a judgment creditor has standing to pursue some of the claims. As this issue remains unresolved, the Trust and bankruptcy estate stands the risk of a finding that some of DFG's claims belong exclusively to DFG without any standing rights of the Trustee. As such, the Trustee would not be entitled to any recovery from DFG's exclusive claims. And, the Trustee would have had to deal with the time, burden, and expense of undoubtedly working to

resolve an appeal from any ruling regarding DFG and Verde Parties' bids relating to the Sale Proceedings. The Settlement Agreement, on the other hand, provides the Trustee with an immediate recovery of $200,000.

WHEREFORE, the Parties respectfully request that this Court enter an order approving the Settlement Agreement, and authorizing the parties to take any and all action necessary to consummate the Settlement Agreement.

Dated: October 10, 2016

**ALLEN BARNES & JONES, PLC**

By: */s/ Michael A. Jones*
Michael A. Jones
***Attorneys for Thomas H. Allen, as Trustee of the Liquidating Trust Agreement and Declaration of Trust dated November 12, 2012***

**WILSON KEADJIAN BROWNDORF, LLP**

By: */s/ Marc Y. Lazo*
Marc Y. Lazo
***Attorneys for Plaintiffs***

**DICKINSON WRIGHT PLLC**

By: */s/ Robert Shull*
Robert Shull
Charles H. Oldham
***Attorneys for Defendants Heather Hendon and Victoria A. Hendon***

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

By: */s / Susan M. Freeman*
Susan M. Freeman
Robert McKirgan
***Attorneys for Defendants Ernie Garcia, Steven Johnson, Verde Auto Services, LLC, Verde Investments, Inc.***

**NUSSBAUM GILLIS & DINNER, P.C.**

By: */s/ Dean M. Dinner*
Dean M. Dinner
*Attorneys for Defendants PacWest Energy,*
*LLC, Equilon Enterprises, LLC, and Jacksons Food*
*Stores, Inc.*

**COPIES** of the foregoing served
on October 10, 2016, via ECF notice
on all parties that have appeared in
this case.

By */s/ Marie H. Mancino*
   MARIE H. MANCINO
   LEWIS ROCA ROTHGERBER CHRISTIE, LLP

2011011743_5

Case 2:11-bk-21164-SHG    Doc 230    Filed 10/10/16    Entered 10/10/16 13:50:22    Desc
Main Document    Page 15 of 15